436 So.2d 124 (1982)
Gloria TAYLOR, Appellant,
v.
The STATE of Florida, Appellee.
No. 81-394.
District Court of Appeal of Florida, Third District.
April 20, 1982.
On Rehearing August 2, 1983.
Sweetapple & Kamilar and Robert A. Sweetapple, Miami, for appellant.
Jim Smith, Atty. Gen. and Calvin L. Fox, Asst. Atty. Gen., for appellee.
Before HENDRY, BASKIN and JORGENSON, JJ.
On Rehearing En Banc August 2, 1983.
BASKIN, Judge.
Due process violations require reversal of Gloria Taylor's probation revocation. The affidavit alleged that she violated her probation by committing an armed robbery of Michele Peletier. At the beginning of the probation violation hearing, the court permitted the state to change the name of the victim to "Darlene Mack and/or Denise Sortini."
Defense counsel argues that, after the trial court refused to preclude defendant's new counsel from taking Darlene Macks's deposition, the state failed to furnish her correct address. The state's conduct, he asserts, undermined his preparation because he relied upon the state's allegation that Michele Peletier was the victim of the offense charged. Michele Peletier had failed to appear when noticed for deposition, and the surprise amendment of the affidavit prejudiced the defense. We agree that the trial court erred in refusing to allow defense counsel an opportunity to prepare for the substantive change in the charging document and that the denial deprived defendant Taylor of due process of law. Cuciak v. State, 410 So.2d 916 (Fla. 1982); see Hines v. State, 358 So.2d 183 (Fla. 1978).
In addition, we note that the order revoking probation states that defendant Taylor committed an armed robbery against Michele Peletier. Since Michele Peletier neither appeared nor testified at the hearing and no evidence of any crime against Peletier was presented, the trial court's order revoking probation is reversed on that ground as well.
Reversed and remanded.
JORGENSON, Judge, dissenting.
I respectfully dissent.
*125 The amendment of the affidavit of violation of probation was not prejudicial to this defendant, nor has the record been properly preserved for our review. Nelson v. State, 85 So.2d 832 (Fla. 1956); Constantino v. State, 224 So.2d 341 (Fla. 3d DCA 1969).
The affidavit of violation of probation was properly amended prior to the taking of any testimony so as to reflect the name of the true victim, Darlene Mack, whose deposition had previously been taken by prior counsel and who was a named victim in the information in the substantive case.[1] I fail to see how the granting of the motion to amend the affidavit of violation of probation does anything other than prevent a defense "gotcha".[2]
The applicable provision of Fla.R.Crim.P. 3.220(d), dealing with discovery depositions by the defendant, makes no mention of multiple depositions of the same witness. The trial court simply did not err when it refused to grant a continuance for the taking of a second deposition of the victim/witness who had been previously deposed. Repetitive depositions can serve only to further disenchant the public with the processes of the criminal justice system.[3]
This record demonstrates that the defendant had the benefit of a discovery deposition of the victim, taken by predecessor counsel. That deposition was used for impeachment purposes during the course of the hearing below.[4] The victim identified the defendant shortly after the robbery. The identification was buttressed by the victim's detailed description of the defendant, including an unusual birthmark over the eye. This information was given to the police prior to the defendant's apprehension. The victim's identification of the defendant, both at the scene and in court, was unequivocal. Field confrontation is inherently more reliable than any subsequent identification. State v. Freber, 366 So.2d 426 (Fla. 1978); Miller v. State, 403 So.2d 1017 (Fla. 5th DCA 1981). Given the totality of the identification procedure in the field and the subsequent in-court identification, no error has been demonstrated. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).
Since the trial court properly amended the affidavit of violation, the error in the order of revocation should be cured by a consistent amendment reflecting the name of the true victim.
I would affirm.

ON REHEARING EN BANC
Before SCHWARTZ, C.J., and HENDRY, BARKDULL, HUBBART, NESBITT, BASKIN, DANIEL S. PEARSON and JORGENSON, JJ.[*]
DANIEL S. PEARSON, Judge.
We grant the State's motion for a rehearing en banc to review the panel decision, *126 which we find to be in conflict with Stevens v. State, 351 So.2d 1077 (Fla. 3d DCA 1977), aff'd and quashed in part on other grounds, 372 So.2d 1370 (Fla. 1979).[1],[2] We vacate the panel decision and affirm the trial court's order revoking the defendant's probation.
The affidavit for violation of Taylor's probation charged in pertinent part that "on or about April 24, 1980, in Dade County, Florida, the probationer did commit the Offense of Armed Robbery against Michelle Peletier in violation of Florida Statutes ...." The corresponding information charged the defendant with committing the substantive offense of armed robbery on that date in Dade County and named the victims as being Darlene Mack and Denise Sortini. Before the commencement of the probation violation hearing, the Assistant State Attorney moved to amend the affidavit so as to accurately reflect the names of the victims as Mack and Sortini. He explained that Mrs. Mack and her fifteen-year-old daughter, Denise Sortini, were using a vehicle which Mack had borrowed from Peletier when they were held up by the defendant. Of course, defense counsel already knew this, because five months earlier Mack and Sortini had been deposed in preparation for the trial on the substantive charge contained in the information.[3] Notwithstanding this knowledge, defense counsel reflexively recited the litany of "no notice," "untimely," "surprise," and "prejudice" to the State's motion to amend. The litany was belied not only by what defense counsel knew, but by the fact that only moments before he was insistent that the substantive trial precede the probation violation hearing. In the words of the prosecutor:
"I don't see any prejudice to the Defendant... . [H]e wants to proceed on the substantive case first and [now] he says that he is not prepared to proceed with the victims who are stated in the Information. That just doesn't seem to make any sense."
Indeed, it did not make any sense, and the trial judge allowed the affidavit to be amended.
The hearing proceeded. The State called several witnesses, including Mrs. Mack. She identified the defendant as being one *127 of the two people who stole the vehicle at gunpoint. Defense counsel extensively cross-examined her, effectively utilizing her prior sworn deposition to refresh her recollection or to impeach her. Defense counsel then called as his witness the other victim of the crime, Denise Sortini, confident that he could elicit from her testimony that (a) the entire incident took two or three minutes (not, as Mack had testified, ten or fifteen minutes); (b) she noticed nothing unusual about the defendant's face (not, as Mack had testified, that the defendant had a severely bruised left eye); and (c) unlike Mrs. Mack, Denise could not identify the defendant immediately after Taylor's arrest. Defense counsel's confidence arose, obviously, from the fact that Denise had previously made such statements in her sworn deposition to which defense counsel generously referred whenever Denise wavered from her expected trial testimony.
Counsel followed this by calling two witnesses, Veronica Martin and Jill Brown, to establish an alibi for the defendant and, incidentally, to refute Mrs. Mack's testimony that the defendant's left eye was bruised. The defendant then testified that she was with Veronica, Jill and others at someone's home during the time that the robbery was said to have occurred. Only with complete knowledge of the victims' expected testimony would this alibi defense have been possible.
We do not think it could be any clearer that the defendant, through the substantive charge contained in the information and through the depositions of Mack and Sortini, had actual notice that Mack and Sortini were the sole victims of the armed robbery and that Peletier, despite being named as a victim in the affidavit, was merely the owner of the vehicle borrowed by Mack. Had the State proceeded to a hearing on the affidavit naming Peletier as the victim and proved, instead, that Mack and Sortini were the actual victims, Stevens v. State would compel us to reject the defendant's claim that the variance was fatal, since it so clearly appears that the defendant was neither misled nor embarrassed in the preparation of her defense. See Hines v. State, 358 So.2d 183 (Fla. 1978). The amendment of the affidavit before the hearing had the totally immaterial effect of changing the label placed on the result from "nonprejudicial variance" to "nonprejudicial amendment."
Moreover, we simply cannot discern what discovery rule the defendant contends was violated. Certainly there could be no violation by the State's failure, if it occurred, to furnish Mrs. Mack's correct address to the defendant, long after Mrs. Mack had been deposed. Certainly any contention that the defendant was entitled to separately depose Mrs. Mack for the probation violation hearing after she had been deposed in connection with the substantive charge is completely frivolous in light of Cuciak v. State, 410 So.2d 916 (Fla. 1982), which allows for discovery in probation revocation hearings only where such hearings are not bottomed on offenses which are simultaneously the subject of criminal proceedings in which discovery is provided for by rule. Certainly Michele Peletier's failure to appear for deposition at most would preclude the State from calling her as a witness in the probation revocation hearing, which the State had no interest in doing. But if some violation arguably occurred, we cannot imagine a case in which the violation is so definitively nonprejudicial.[4] Defense counsel knew who the victims of the robbery were and was thoroughly prepared through their depositions to examine and cross-examine them.
Finally, defendant's claim that the written order revoking probation mistakenly identified Peletier as the victim is hardly a basis for reversal. That order can simply be corrected on remand. Boggs v. Wainwright, 223 So.2d 316 (Fla. 1969); Perry v. State ex rel. Mills, 357 So.2d 425 (Fla. 3d *128 DCA 1978); Luhrs v. State, 394 So.2d 137 (Fla. 5th DCA 1981).
Accordingly, we affirm the order revoking the defendant's probation and remand the case to the trial court with directions to correct the order to reflect the names of the victims of the robbery.
NESBITT, Judge (specially concurring):
I concur with the majority opinion in granting the state's motion for rehearing en banc, but write to express my views on the scope of the en banc rule. As I view it, there were two bases for the original majority's conclusion that the defendant's due process rights were violated. First, the trial court erred in allowing the state to amend the affidavit to change the name of the victim. Second, the defendant was prejudiced by the failure of the state to provide Darlene Mack's correct address after the court refused to preclude defense counsel from retaking that witness' redeposition. These errors, the original majority found, combined to create a due process infringement.
I agree with Judge Pearson that the ruling on the first issue is in conflict with this court's decision in Stevens v. State, 351 So.2d 1077 (Fla. 3d DCA 1977), aff'd and quashed in part on other grounds, 372 So.2d 1370 (Fla. 1979). In Stevens, the court found that since the defendant had actual notice of the offense charged and of the proper address, the defendant was not denied the minimal criterion of due process required in a probation revocation hearing. In the present case, the defendant had actual notice of the name of the victim where the victim's deposition was taken by the defendant's prior counsel and she was the named victim in the information in the substantive case. Accordingly, I agree with the majority that there is a conflict on this issue of the type contemplated by Florida Rule of Appellate Procedure 9.331, Schreiber v. Chase Federal Savings & Loan Ass'n, 422 So.2d 911, 914-22 (Fla. 3d DCA 1982) (en banc) and Finney v. State, 420 So.2d 639 (Fla. 3d DCA 1982) (en banc).[1]
Having determined that this court has a valid basis upon which to exercise its jurisdiction, I find that it is our responsibility to resolve all other questions necessary to the complete determination of the appeal. This procedure is one which has been utilized by the supreme court for many years. See Bould v. Touchette, 349 So.2d 1181 (Fla. 1977); Zirin v. Charles Pfizer & Co., 128 So.2d 594 (Fla. 1961). As this court recognized in Schreiber v. Chase Federal Savings & Loan Ass'n, supra, at 914, "the power to be exercised by a district court of appeal must be the same as formerly[2] exercised by the Supreme Court." Additionally, there are sound reasons for determining all issues once valid jurisdiction has been obtained.
Needless steps in litigation should be avoided wherever possible and courts should always bear in mind the almost universal command of constitutions that justice should be administered without "sale, denial or delay." Piecemeal determination of a cause by our appellate court should be avoided and when a case is properly lodged here there is no reason why it should not then be terminated here. In the Lissenden case [P.C. Lissenden Co., Inc. v. Board of County Commissioners of Palm Beach County, 116 So.2d 632, 636 (Fla. 1959)] we said, with respect to appeals and in discussing an analogous matter "[m]oreover, the efficient and speedy administration of justice is * * * promoted" by doing so.
Zirin v. Charles Pfizer & Co., supra, at 596. If we did not resolve all issues presented by the appeal, we would stultify the purpose of the en banc rule which is to maintain uniformity in this court's decisions.[3]
*129 Consequently, while I agree with Judge Pearson that our en banc authority has been activated to hear the present case, I do so only for the reasons stated herein.
BASKIN, Judge (dissenting).
I am unconvinced by the majority opinion, which strikes me as cavalier in its disdain for due process of law for Gloria Taylor. First, it grants rehearing en banc when neither conflict nor lack of uniformity exists and then it condones the trial court's arbitrary rulings. Specifically, the trial court permitted a last minute substantive change in the charging document, refused to permit defense counsel time to prepare for the altered charge, permitted witnesses who had failed to respond to subpoena to testify without inquiry as to prejudice, entered a conviction totally unsupported by evidence and entered a defective order revoking probation. This demonstration of a rush to judgment is unacceptable under the law. I therefore dissent, adhering to the views expressed in my original opinion and, in addition, responding to newly raised points.
Implicitly acknowledging that the cases cited by the state presented no valid basis for en banc review, the majority foraged for a substitute and conjured up a lack of uniformity with Stevens v. State, 351 So.2d 1077 (Fla. 3d DCA 1977) aff'd and quashed in part on other grounds, 372 So.2d 1370 (Fla. 1979). Not even an imaginative reading of Stevens will support the factual similarity necessary to find a lack of uniformity with Taylor's case. Accordingly, I find en banc review inappropriate.
In seeking a rehearing en banc, the state cited authorities which supported the proposition that an incomplete record should not result in reversal. I fail to understand how this record could be considered incomplete. Is the state suggesting that a deposition that was never taken must be included in the record? Under these circumstances, I am forced to conclude that the majority granted rehearing, not because of conflict or lack of uniformity, but because the court believed the record was incomplete. Even if the authorities cited by the state were applicable to the facts, they no longer govern. Florida Rule of Appellate Procedure 9.200(f)(2), now provides:
If the court finds the record is incomplete, it shall direct a party to supply the omitted parts of the record. No proceeding shall be determined because the record is incomplete until an opportunity to supplement the record had been given.[[*]]
Thus, the state has provided no basis for en banc hearing.
Turning to the merits of Gloria Taylor's appeal, it appears to me that reversible error occurred throughout the proceedings. First, immediately prior to the commencement of the probation revocation hearing, the court permitted the state to amend the affidavit charging a violation of probation. Michelle Peletier had originally been listed as the victim of the offense. When the violation hearing commenced, the court permitted the state to amend the charge to name Darlene Mack, the individual who had formerly been listed as a witness and who had failed to appear for deposition, as the victim of the offense. The court not only refused counsel an opportunity to prepare for the substantive change in the charging document, it also neglected to conduct a hearing to determine whether Taylor was prejudiced by the failure of the witnesses to appear for deposition. Florida Rule of Criminal Procedure 3.220(a) does not preclude the retaking of a deposition rendered necessary by the change of counsel. Although her former attorney had taken depositions, Taylor's new counsel considered them inadequate and subpoenaed the witnesses. *130 The state filed a motion to quash the subpoenas but the court denied the motion. Despite the failure of the witnesses to appear for deposition, the court permitted them to testify. Under these circumstances, I believe the court should have inquired into the question of prejudice, especially since the state furnished defense counsel incorrect addresses.
The next error appears in the order revoking probation. Despite the fact that the orally-amended affidavit named Darlene Mack as the victim, the court entered an order revoking probation for an armed robbery upon Michelle Peletur [sic]. Thus, the amendment and the order revoking probation are inconsistent. On the other hand, if the amendment is disregarded and the victim of the offense was Michelle Peletier, the revocation of probation cannot stand because the state offered no evidence of an offense upon Michelle Peletier. Consequently, either considering or disregarding the amendment, I find the order revoking probation erroneous. See Cross v. State, 369 So.2d 685 (Fla. 4th DCA 1979); see generally Bernhardt v. State, 288 So.2d 490 (Fla. 1974).
The majority's conclusion that defendant Taylor was neither misled nor embarrassed in the preparation of her defense is immediately suspect when one realizes that the trial court did not conduct a hearing directed to the issue. In fact, this court's seeming ability to decide upon intuition closely resembles a predisposition to conclude without trial that defendant Taylor was guilty.
For these reasons I would deny rehearing en banc.
HUBBART, Judge (dissenting).
I must respectfully dissent. I would deny the state's motion for rehearing en banc because, in my view, the panel decision herein creates no intra-district conflict of decisions sufficient to invoke our extraordinary en banc jurisdiction under Fla.R. App.P. 9.331(a). Finney v. State, 420 So.2d 639 (Fla. 3d DCA 1982) (en banc); see also Schreiber v. Chase Federal Savings & Loan Assn., 422 So.2d 911, 914-16 (Fla. 3d DCA 1982) (en banc) (Nesbitt, J., dissenting).
First, it is plain that the panel decision cannot possibly create an intra-district conflict with Burau v. State, 353 So.2d 1183 (Fla. 3d DCA 1977); Abascal v. State, 345 So.2d 397 (Fla. 3d DCA 1977); Costantino v. State, 224 So.2d 341 (Fla. 3d DCA 1969), as urged by the state in its motion for rehearing en banc, because these cases all involve a point of appellate practice which no longer represents good law today. They stand for the proposition that an appellate court is compelled to affirm a trial court judgment based on an incomplete appellate record. Fla.R.App.P. 9.200(f)(2), which supersedes these cases, has since been promulgated. This rule provides:
"If the court finds the record is incomplete, it shall direct a party to supply the omitted parts of the record. No proceeding shall be determined because the record is incomplete until an opportunity to supplement the record has been given." (emphasis added)
The committee note to this section of the rule states in part:
"The new rule is intended to assure that appellate proceedings will be decided upon their merits... . This rule is intended to assure that any portion of the record before the lower tribunal which is material to a decision by the court will be available to the court. It is specifically intended to avoid those situations which have occurred in the past where an order has been affirmed because appellate counsel failed to bring up the portions of the record necessary to determine whether or not there was an error." (emphasis added)
It is therefore clear, beyond any hope of successful contradiction, that the above cases in no way conflict with the panel decision in the instant case.
Secondly, it is equally plain that the panel decision creates no intra-district conflict with Stevens v. State, 351 So.2d 1077 (Fla. 3d DCA 1977), aff'd and quashed in part on other grounds, 372 So.2d 1370 (Fla. 1979), as urged by Judge Pearson in his en banc *131 opinion for the court herein. In Stevens, we held that the defendant probationer was adequately notified of the alleged probation violation notwithstanding an error in the probation revocation affidavit as to the exact address of a robbery charged therein when: (a) "[d]efense counsel did not allege that he was unprepared for the revocation hearing," 351 So.2d at 1081, and (b) defense counsel had "actual notice of the correct address" of the charged robbery and was not "embarrassed or misled in the preparation or presentation of his defense." 351 So.2d at 1081. In the instant case, we deal with a far more serious error in the probation revocation affidavit, to wit: an error in the identity of the victim of the charged robbery; moreover, defense counsel, unlike counsel in Stevens, strongly protested a last minute amendment to the probation revocation affidavit on the ground that he was unprepared to go forward on that basis. Plainly, this case does not have substantially the same controlling facts as Stevens, and, therefore, the two cases cannot create a conflict sufficient to invoke our en banc jurisdiction under the strict criteria established by this court in Finney v. State, supra.
I would deny the state's motion for rehearing en banc.
HENDRY, Judge, concurs.
NOTES
[*] FERGUSON, J., did not participate in the decision of the court.
[1] Michelle Peletier was the registered owner of the motor vehicle which was the subject matter of the armed robbery. It should be noted further that the issue in this case, as framed by the defense, was identification of the accused, not identity of the victim.
[2] State v. Anders, 388 So.2d 308 (Fla. 3d DCA 1980); State v. Belien, 379 So.2d 446 (Fla. 3d DCA 1980); Salcedo v. Association Cubana, Inc., 368 So.2d 1337 (Fla. 3d DCA 1979).
[3] The effect of continuances upon victim and witness is well-documented by Frank Carrington in his stirring work, The Victims, where he states:

Nothing can weaken the resolve of victims and witnesses more quickly than to be required to appear at the criminal courts building time after time only to be told that the case has been continued again. In addition to the delay and aggravation, the victims and witnesses often lose many days of work. Even the most conscientious of them may finally decide that the simple economics of the situation finally dictates that they can no longer afford to show up in court.
Frank Carrington, The Victims, 146 (1975).
[4] The majority does not address the sufficiency of the defendant's "motion to suppress showup identification", which is, in my view, patently defective. See Fla.R.Crim.P. 3.190(h)(2). Thus, I do not reach that issue.
[1] This court declared in Stevens that even where the affidavit of probation misidentifies the place where the robbery occurred, no due process rights of the probationer are violated where the record shows that the probationer had actual notice of the correct location of the crime. In Stevens, as in the present case, the record reflected:

"that [defense] counsel did have advance notice that the alleged probation violation consisted of the same robbery ... charged in the information. At the time of the probation revocation hearing, the prosecutor stated that [defense] counsel had been notified `as to what the probation violation would consist of, and that being the ... robbery case.' The trial court decided to proceed with the hearing."
This court held in Stevens:
"The allegation that the revocation was based upon an offense not charged in the affidavit, stems from the fact that the affidavit of violation contains an incorrect street number for the Publix which was robbed. We find that this is not a fatal variance since Stevens had actual notice of the correct address, and the record fails to reveal a possibility that he was embarrassed or misled in the preparation or presentation of his defense. [citations omitted]. The defendant was not denied the minimal criterion of due process guaranteed by law in probation revocation proceedings." 351 So.2d at 1081.
[2] Under the less restrictive test proposed by Judge Schwartz in Schreiber v. Chase Federal Savings & Loan Association, 422 So.2d 911 (Fla. 3d DCA 1982), en banc review would be activated when it appears that panel decisions lack uniformity, that is, are "so inconsistent and disharmonious that they would not have been rendered by the same panel of the court." Id. at 912 n. 1. The panel decision is at least disharmonious, if not in actual conflict, with the rules that (a) a variance between what is alleged in the charging document and the proof at trial is immaterial where there is no prejudice to the defendant, Isom v. State, 387 So.2d 529 (Fla. 3d DCA 1980); Sharp v. State, 328 So.2d 503 (Fla. 3d DCA 1976); and (b) an amendment to an information or a statement of particulars is permitted where defendant is aware that the State's proof would relate to the date set forth in the amendment, and thus, no harm or prejudice would result. Holland v. State, 359 So.2d 28 (Fla. 3d DCA 1978).
[3] The depositions were taken on May 29, 1980, almost five months before the probation revocation hearing held on October 27, 1980.
[4] In probation revocation proceedings, the failure of the trial court to conduct a Richardson hearing does not require reversal where the appellate court finds to its satisfaction that the error is harmless. Cuciak v. State, 410 So.2d 916.
[1] These cases define decisional conflict as it was articulated in Nielsen v. City of Sarasota, 117 So.2d 731 (Fla. 1960).
[2] Between 1956 and 1972.
[3] If, in exercising this jurisdiction, we create or remain in conflict with a supreme Court or another district court of appeal decision, the supreme court has jurisdiction to resolve that conflict. Art. V, § 3(b)(3), Fla. Const. (1980).
[*] The committee note to this section of the rule states, in part:

The new rule is intended to assure that appellate proceedings will be decided upon their merits... . This rule is intended to assure that any portion of the record before the lower tribunal which is material to a decision by the court will be available to the court. It is specifically intended to avoid those situations which have occurred in the past where an order has been affirmed because appellate counsel failed to bring up the portions of the record necessary to determine whether or not there was an error.