560 So.2d 1241 (1990)
STATE of Florida, Appellant,
v.
John GEORGOUDIOU, Appellee.
No. 88-1508.
District Court of Appeal of Florida, Fifth District.
April 5, 1990.
Rehearing Denied May 21, 1990.
Melvin David Stack, Deputy State Atty., Daytona Beach, for appellant.
Dan R. Warren of Judge & Warren, P.A., Daytona Beach, for appellee.

EN BANC OPINION ON MOTION FOR REHEARING[1]
COBB, Judge.
Pursuant to an en banc motion for rehearing filed by the state, we withdraw our prior opinion in this cause dated June 29, 1989, and substitute the following:
The issue on this appeal is whether the trial court erred in granting a motion to suppress contraband evidence obtained pursuant to a search warrant, executed at the residence of the appellee, John Georgoudiou. The search warrant was based upon the affidavit of one Officer Martino, an investigator with the Daytona Beach Shores Police Department. The affidavit of Martino, after specifically describing the premises to be searched, recited:
On December 3, 1986, information was obtained from a reliable source that the aforementioned residence is a source for large quantities of cocaine, cananbis [sic], and hashish.
The investigation has revealed that the occupant of this residence, John Georgoudio has been, and presently is involved in the Sale and Delivery and Use of said controlled substances at that premises. Within the past 18 hours a confidential informant has met with John *1242 Georgoudio at the aforementioned residence and arrangements were made for the purchase of 1 ounce of cocaine for a price of $1,400.00 with the purchase to be made at the residence on December 4, 1986. This conversation was taped recorded [sic] with a hidden body transmitter, and the confidential informant was under surveillance while at the residence.
The investigation has revealed that the suspect has been involved in this activity for at least two years, having been the supplier and having availability of ounces of cocaine, hashish and cannabis. The confidential informant has frequently purchased ounces of cocaine from the suspect and up to 1/4 pound of cocaine at one given time.
During the conversation at the residence located at 1507 North Atlantic Avenue, Daytona Beach, Volusia County, Florida, between the confidential informant and John Georgoudio, the confidential informant asked for a price of $1,300 for an ounce of cocaine but John Georgoudio stated, the lowest he would go is $1,400 per ounce of cocaine. The confidential informant told John Georgoudio he wanted as pure a cocaine as he could get. John Georgoudio stated it would be pure or good cocaine like the flake that he has sold to the confidential informant in the past. While the confidential informant was at the residence he saw an approximately 4 foot cannabis plant hanging in the closet to dry. Also observed in the residence a pound of hashish a cannabis beside the plant referred to above [sic]. A triple beam scale, baggies, and pipes used in the sale or ingestion of narcotics were observed in residence.
The Confidential Informant was told by John Georgoudio to come back around 4:00 P.M. tomorrow afternoon, Thursday, December 4, 1986, and he could pick up the cocaine at the 1507 North Atlantic Avenue residence.
Detective Mike Martino was present during the surveillance and monitored the conversations between John Georgoudio and the Confidential Informant which were recorded over the body transmitter on December 3, 1986.
The testimony presented at the hearing on the motion to suppress revealed that the informant, Moshoures, and a man named Vrochotoulos were under arrest for possession of illegal drugs. Neither man had given information to the police in the past. After his arrest, Moshoures gave the police a note stating that he would give information in order to get out of trouble. The information he gave implicated Georgoudiou in drug dealing, and prompted the police to send Moshoures to Georgoudiou's home equipped with a monitored body transmitter. The conversation that took place there between Georgoudiou and Moshoures resulted in the issuance and execution of the search warrant herein at issue.
The suppression hearing was conducted in three sessions, the last one taking place on September 23, 1987. Moshoures did not testify at the hearing. Nine months later, the trial court signed an order dated June 24, 1988, suppressing the evidence found at Georgoudiou's residence. To suppress that evidence, it was necessary for the trial court to conclude that the judge issuing the search warrant was misled by information in Martino's affidavit which Martino knew was false or would have known was false except for his reckless disregard of the truth. United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The trial court reached that conclusion based upon three factual findings:
(1) Martino's affidavit referred to the informant, Moshoures, as a "reliable source," although he had never before provided information to law enforcement. The trial court determined that therefore the state could not rely on information from Moshoures that Georgoudiou's residence was a source of drug activity, and had been one for at least two years;
(2) The tape referred to in the affidavit was "of poor quality and of little or no evidentiary value ... the language *1243 used in the affidavit for the issuance of the search warrant cannot be heard on the tape"; and
(3) The issuing magistrate was not told that the law enforcement officers had advised a confidential informant that making a case against the defendant might require illegal conduct of the informant.
We must consider these three findings in light of the record. The trial court's first finding  i.e., Michael Moshoures had never provided law enforcement with information in the past  is irrelevant. The affidavit for the search warrant was based on what Martino heard Georgoudiou say through the monitor transmitter, not on what Moshoures told Martino. Martino's (not Moshoures') reliability was the basis for the issuance of the search warrant. Moreover, an informant's information may provide its own indicia of reliability. State v. Vanwinkle, 444 So.2d 1005 (Fla. 5th DCA), review denied, 450 So.2d 489 (Fla. 1984). Controlled buys were upheld as the basis for probable cause for the issuance of a search warrant in State v. Moise, 522 So.2d 1023 (Fla. 5th DCA 1988), and State v. Cohen, 442 So.2d 346 (Fla. 5th DCA 1983). Although Martino's affidavit refers to Moshoures as a "reliable source," which the tape recorded conversation apparently confirmed, the affidavit never states that Moshoures had provided information in the past.
The real issue is the validity of the trial judge's determination that Martino played fast and loose with the truth in his affidavit, a determination purportedly based upon the finding that the tape introduced in evidence was inaudible. At the suppression hearing defense counsel did not contend that the monitored tape recording of the conversation between Georgoudiou and Moshoures was inaudible. The state had furnished a copy of that tape to the defense, and it is clear from their arguments to the trial judge that both sides had listened to, and understood, the recording. The argument of the defense counsel was that the tape was clear  and revealed that such words as cocaine, cannabis, and hashish were not exchanged between Georgoudiou and Moshoures in their conversation of December 3, 1986, which purportedly set up a cocaine sale for the next day.
It was the defense which offered its copy of the tape recording into evidence to support its argument that the tape disproved the information asserted in Martino's affidavit. Therefore, the inaudibility of that tape copy militated against the argument of the defense, not the argument of the state. The original of the tape was never introduced, and remained in the possession of the state at all times.
At the conclusion of the hearing, defense counsel insisted that the court reporter prepare a transcript of the tape, to aid appellate review. The state objected, but the trial court authorized a transcript for the purpose urged by the defense. The trial court delegated to defense counsel the responsibility of so instructing the court reporter. Unfortunately, this was never done.
The trial court did not act upon the motion until some nine months after the hearing. At that time the trial court reasoned that if the defense copy of the tape was then unclear, it meant that Martino had lied. This reasoning, of course, is totally illogical. The fact that the defense copy of the tape was inaudible some nine months after the hearing, after having been heard while in the possession of the defense prior to being filed with the trial court, does not show that the original tape was inaudible, nor does it prove what Martino heard  or did not hear  over the monitor. It proves only that the defense failed to establish the point it argued at the hearing, and needed the original tape for that purpose. It also indicates that the trial judge should have required production of the original tape upon discovery of the defect in the copy.
On appeal, both counsel at oral argument assumed the audibility of the tape copy in evidence and urged the original appellate panel to listen to the tape in order to verify whether or not a drug deal was referred to with sufficient specificity. But when this court attempted review, we discovered that the tape had been erased. We can only *1244 assume that this occurred inadvertently while the tape was in the possession of the trial court, since the order below refers to the "poor quality" of the tape and not to its total inaudibility.
Attached to the state's memorandum of law filed with the trial court was the state's transcript of the disputed tape. That transcript is not in evidence, and thus its contents cannot control the outcome of this appeal.[2] Nevertheless, the fact that such a transcript was presented and argued to the trial court as an accurate representation of the tape, without objection, should be noted.
The trial court's third factual finding  i.e., law enforcement advice that an informant might have to engage in illegal conduct  is equally unpersuasive. It is based on the testimony of Vrochotoulos, who was not the informant supplying the information that went into Martino's affidavit. Vrochotoulos testified that an officer named Monaco told him, as a prospective informant against Georgoudiou, that he "might have to smoke some marijuana to make it look good." This purported conversation did not occur in the presence of either Martino (the affiant) or Moshoures (the informant relied upon by the affiant). Furthermore, a comment made to Vrochotoulos cannot possibly bear on whether Martino's affidavit constitutes a reckless disregard for the truth under Leon and Franks. What possible difference can it make whether Vrochotoulos was told that he might have to engage in illegal conduct? For that matter, what difference does it make if he did?
The record simply does not support the suppression order. There was no logical or legal basis in the record for the trial court's conclusion that Martino's affidavit was false or recklessly disregarded the truth. Accordingly, the instant suppression order is reversed. See State v. Wildes, 468 So.2d 550 (Fla. 5th DCA 1985).
REVERSED.
DAUKSCH and SHARP, W., JJ., concur.
HARRIS, J., concurs and concurs specially, with opinion, with which DAUKSCH, J., concurs.
GRIFFIN, J., concurs in result only.
COWART, J., dissents, with opinion in which DANIEL, C.J., and GOSHORN, J., concur.
PETERSON, J., dissents, with opinion.
HARRIS, Judge, concurring specially:
I concur with the opinion written by Judge Cobb but for somewhat different reasons. Pursuant to Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.E.2d 527 (1983):
The task of the magistrate in issuing the search warrant is simply to make a practical, common sense decision whether, under all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in the particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for ... concluding "that probable cause existed".
In the case before us Officer Martino, acting on a tip from an informer that the informer had purchased cocaine from appellee for over two years, equipped the informer with a body bug and sent him to appellee's home to purchase cocaine. Officer Martino monitored the conversation and heard the informer enter the house and ask to speak to appellee privately. He next heard the informer ask if appellee could get him an ounce of substance to take back to South Carolina. Appellee said he could arrange it. The informer quoted a price of $1,300.00, but appellee stated the lowest he would go was $1,400.00 because the substance would be pure and crystal, like the *1245 substance he had provided to the informer in the past.
Officer Martino had no doubt the informer and appellee were talking about the purchase and sale of an ounce of cocaine. The questions asked at the hearing before the trial court were:
Q. You understand the drug lingo, do you not, as an investigator?
A. Yes, sir.
Q. And in fact many times drug dealers don't always use the word cocaine or hash or cannibus [sic] when they are doing a deal?
A. That's correct.
* * * * * *
Q. When you heard the word pure crystal as a law enforcement investigator, what did that denote to you that they were talking about?
A. Cocaine.
Based upon the knowledge obtained from the informer and from the conversation overheard on the body bug, Officer Martino executed an affidavit for a search warrant. Clearly the affidavit on its face was adequate to obtain a search warrant. The question before us is whether the court properly quashed the search warrant after taking testimony going behind the issuance of the warrant.[1]
At this point the trial judge becomes a "reviewing court" and his task is to determine if there was a substantial basis to determine that probable cause existed at the time the search warrant issued. His task does not change merely because he was also the magistrate that issued the search warrant. He may not merely change his mind; there must be valid, record reasons for such change.
The court found that the following portions of the affidavit were false or not corroborated:
a. That a reliable source revealed that there were large quantities of drugs in appellee's home;
b. That an investigation had revealed that appellee had been and was presently engaged in the possession, sale and use of drugs; and
c. That an investigation also revealed that appellee had been so engaged for at least two years and had access to ounces of drugs.
I agree with Judge Cobb that the fact that the informant was referred to as a "reliable source" when he had never previously provided law enforcement reliable information is totally irrelevant. Also the trial court was clearly in error when it stated that the sole source of the investigation was the informant. This completely ignores the fact that prior to the affidavit a controlled buy had been negotiated and recorded and independently overheard by Officer Martino. The tape proved the information given by the informant was reliable, (which in a general sense made him a "reliable source") and that appellee was and had been engaged in the sale and delivery of cocaine for a period of time.
The fact that the tape was "almost inaudible" caused the judge to reject Officer Martino's independent testimony of what he heard of the negotiated purchase. Why? Because of the "false" testimony of referring to the informant as a reliable source? Even though the court referred to the "poor quality" of the tape, the record clearly shows he listened to it and was able to determine that the word "cocaine" was never mentioned on the tape. Further, the comments of defense counsel in the record show that he had listened to the copy given him and based his motion, at least partially, on the information contained on the tape and offered his copy into evidence to support his position. The quality of the tape at the time it was delivered to the defense appears to have been satisfactory since no objection was made to the State. Who knows where the tape was stored during the lengthy period the trial judge was considering his ruling? There is nothing in the record that justifies a finding that Martino either lied or improperly withheld information from his affidavit.
*1246 At the very least the affidavit was based on Officer Martino's overhearing a negotiated purchase of cocaine to be delivered the following day for the purchase price of $1,400 per ounce. Both State v. Cohen, 442 So.2d 346 (Fla. 5th DCA 1983) and State v. Gieseke, 328 So.2d 16 (Fla. 1976) would appear to justify the search warrant on this alone.
Finally, Judge Cowart has made a compelling argument that this case should not have been heard en banc. Since the original majority decision was per curiam affirmed, neither it nor the dissenting opinion has any precedential value. He reasons therefore that such an opinion can neither be of exceptional importance nor inconsistent with the opinion of any court. This argument would be more persuasive if we construed decisional conflict as that developed by the Supreme Court in the exercise of its conflict certiorari jurisdiction; however, as the Supreme Court held in Chase Federal Sav. and Loan Ass'n. v. Schreiber, 479 So.2d 90 (Fla. 1985) the district courts are free to develop their own concepts of decisional uniformity.
The en banc process provides a means for Florida district courts to avoid the perception that each court consists of independent panels speaking with multiple voices with no apparent responsibility to the court as a whole. The process provides an important forum for each court to work as a unified collegial body to achieve the objectives of both finality and uniformity of law within each court's jurisdiction.
Chase at 94.
In the District Court's decision in the Chase case, Judge Schwartz discussed the function of the en banc rule:
A primary function of the en banc rule is to standardize the decisions of each district court so as to minimize the importance of the "luck of the [appellate] draw" (citations omitted) in presenting cases before our increasing multi-member courts.
Chase, 422 So.2d 911, n. 1 (Fla. 3rd DCA 1982).
In the same footnote, Judge Schwartz discusses the standard of review:
We believe that an appropriate standard ... is the rather practical one that decisions lack uniformity whenever it appears that they are so inconsistent and disharmonious that they would not have been rendered by the same panel of the court. Since this is the case ... the particular form in which the nonuniform results are expressed  whether by written opinion, per curiam affirmance or otherwise  cannot jurisdictionally matter, and is important only as a factor in the determination of whether the discretionary authority to grant an en banc hearing will be exercised.
It appears to me, therefore, that a case such as this takes on additional significance when the facts and issues are set out in detail in the dissenting opinion and the unexplained ruling of the per curiam majority conflicts with established law of this court. The original per curiam decision in this case would have supported the trial court's holding that to justify a search warrant, an informant who participates in a controlled buy must have been a reliable source. This conflicts with State v. Cohen, 442 So.2d 346 (Fla. 5th DCA, 1983).
I concur in the reversal.
DAUKSCH, J., concurs.
COWART, Judge, dissenting.
A police officer (Martino) obtained certain information about the defendant from a police informer (Moshoures). The police officer then concealed a sound transmitter on the informer and sent the informer to the defendant's home where the informer engaged the defendant in a conversation. The officer listened to the transmitted conversation as it was being received and recorded on tape. The informer later related to the officer facts about what the informer had seen in the defendant's home. The officer executed an affidavit describing the facts obtained as having been revealed by "the investigation" and as being from "a reliable source." In the affidavit, the officer summarized the officer's impression of the taped conversation. Based on the officer's *1247 affidavit, the trial judge, C. McFerrin Smith, issued a search warrant which resulted in the seizure of evidence from the defendant's home.
Upon a motion to suppress, the trial judge issuing the warrant heard the testimony of five witnesses and listened to the only tape recording in evidence[1] and entered an order finding (1) that the informer was unreliable, (2) that relevant information about the investigation had been omitted from the affidavit and withheld from the trial judge, (3) that the officer's version of the taped conversation as represented in the officer's affidavit was unacceptable to, and rejected by, the trial judge, and (4) that false or uncorroborated information had been provided by the officer to the trial judge. The trial judge further found that with knowledge of the true facts and without the misleading, false and uncorroborated information in the affidavit, he, the trial judge, would not have found probable cause to search the defendant's home and would not have issued the search warrant. The trial judge concluded that he, the trial judge, had been misled in issuing the search warrant and granted the motion and suppressed the evidence seized under the warrant.
The trial judge's factual findings below were based on the trial judge's weighing of the evidence he heard, including his appraisal of the credibility of the witnesses he saw and heard and the trial judge's hearing of the tape of the recorded conversation,[2] the trial judge's comparison of what he heard on the tape with what was stated in the affidavit, and an evaluation of what he, the trial judge, relied on in issuing the search warrant and what, after hearing the evidence at the suppression hearing, the trial judge believed to be the truth.
The trial judge's factual findings, evaluation of testimony based on demeanor and credibility, comparisons, conclusions of fact and judgment calls upon which the appealed order is based, are not matters of law that can be properly reviewed, re-evaluated, and held to be illogical by an appellate court based on a written record on appeal. The trial judge should be upheld and the suppression order should be affirmed.
Another aspect of this case concerns this court's decision to determine this appeal en banc. Article V, Section 4(a), Florida Constitution, provides that in district courts of appeal:
Three judges shall consider each case and the concurrence of two shall be necessary to a decision.
The constitution contains no authorization for a district court of appeal to sit en banc. Florida Rule of Appellate Procedure 9.331(a), purports to authorize a district court of appeal to sit en banc but provides that:
En banc hearings and rehearings shall not be ordered unless the case is of exceptional importance or unless necessary to maintain uniformity in the court's decisions.
"Exceptional importance" cannot mean exceptionally important to the parties because every case is exceptionally important to the parties and counsel. "Exceptional importance" surely does not mean any case in which the en banc majority disagrees with the reasoning or result of a panel majority. "Exceptional importance" must be interpreted to mean a case exceptionally *1248 important to the jurisprudence of the State as a judicial precedent.
Two judges of the original three-judge panel in this case issued a per curiam affirmed (PCA) decision without opinion upholding the trial judge. The third judge filed a separate dissenting opinion.
This court, and the Florida Supreme Court, have held that a per curiam affirmed (PCA) decision has no precedential value.[3] This court has also held that a separate opinion has no precedential value.[4] Therefore, a per curiam affirmed majority panel decision having no precedential value, cannot be a case of exceptional importance and cannot be inconsistent with prior opinions from the same (or any other) court.
Nonetheless, the en banc majority has selected this case for en banc consideration using the rule of procedure to override the constitution and to gain and exercise jurisdiction of this case in place of the original three judge panel.[5] This is an old problem.[6] In an analogous situation, the Florida Supreme Court has consistently declined to exercise their certiorari jurisdiction in district court of appeal PCA cases[7] and in a parallel situation, it has restrained itself against using its position and power to acquire and exercise jurisdiction merely to reach a particular result in a particular case.[8] This court should do likewise, else the constitutional provision for three judge panels is subverted. The vague standard for selection of cases for en banc consideration coupled with no appellate review of the selection decision can combine to deny the litigant equal protection of the law and deprive him of his constitutional right to have his case on appeal heard and decided by the three judge panel to which it was duly, and constitutionally, assigned for decision.[9] Jurisdiction to render a decision in this case should be returned to the original three judge panel.
PETERSON, Judge, dissenting.
I join Judge Cowart's dissent to the extent it addresses the issues presented by the parties to this appeal; I do not join in his discussion of the decision by this court to sit en banc.
The erasure of the tape constituting part of the record below between the time of the hearing on the motion to suppress and the *1249 proceedings in this court prevents us from reviewing the evidence upon which the trial court based his findings of fact. I would, therefore, rely upon his findings rather than making assumptions about the evidence based upon an incomplete record.
NOTES
[1] The record reflects, contrary to the implications of Judge Cowart's dissent, that a copy of the state's motion for en banc rehearing was duly served on counsel for the defense on July 14, 1989, and a written response to the motion was filed with this court on July 19, 1989, by defense counsel. All procedural and substantive due process has been complied with.
[2] If the state's transcript is an accurate representation of the conversation between Georgoudiou and Moshoures, there can be no reasonable doubt that a purchase of one ounce of cocaine by Moshoures from Georgoudiou at a price of $1,400.00 was negotiated on December 3, 1986.
[1] At least implied in granting the order supressing the evidence.
[1] The majority opinion stresses the fact that the trial judge heard a duplicate tape offered by the defense. The State had the original tape. It should not be presumed that the State would provide defense counsel with an inferior copy of the original tape or that the State would permit the trial judge to rely on an inferior copy if the State had a better copy.
[2] Unable to listen to the tape in order to directly pit appellate judge opinion against trial judge opinion, the majority opinion, nevertheless, refers to an unauthenticated transcript admittedly not in evidence and not properly a part of the record on appeal, and disagrees with the findings and conclusions of the trial judge who listened to a duplicate of the tape and compared it with the affidavit. Contrary to the majority opinion, it is not the appellee defendant who needs the tape on appeal. In this case the State, as appellant, has the burden of demonstrating the trial judge erred. Therefore the State should be held to suffer the usually fatal disability of any appellant who cannot produce on appeal an accurate record of the evidence considered by the trial judge in making the appealed decision and order.
[3] Department of Legal Affairs v. District Court of Appeal, 5th District, 434 So.2d 310 (Fla. 1983).
[4] Mouzon v. Mouzon, 458 So.2d 381 (Fla. 5th DCA 1984); O'Brien v. State, 454 So.2d 675 (Fla. 5th DCA 1984), rev. denied, 461 So.2d 116 (Fla. 1984); Dunn v. State, 454 So.2d 641 (Fla. 5th DCA 1984).
[5] The propriety of the en banc consideration was not briefed or argued. Compare the procedure set forth in En Banc Rules adopted October 14, 1985 by the First District Court of Appeal as cited in Appendix B to Florida Appellate Practice (CLE 2d ed. 1986). See also separate opinions in Zabrani v. Cowart, 502 So.2d 1257, 1259 (Fla.3d DCA 1986), approved, 506 So.2d 1035 (Fla. 1987); and State v. Navarro, 464 So.2d 137 (Fla.3d DCA 1984).
[6] See Zabrani, supra; Fleischer v. Hi-rise Homes, Inc., 536 So.2d 1101 (Fla. 4th DCA 1988); Green v. Green, 501 So.2d 1306 (Fla. 4th DCA 1986), rev. denied, 513 So.2d 1061 (Fla. 1987); Carroll v. State, 497 So.2d 253 (Fla.3d DCA 1985), rev. denied, 511 So.2d 297 (Fla. 1987); Meehan v. Celotex Corp., 466 So.2d 1100 (Fla.3d DCA 1985); quashed, 523 So.2d 141 (Fla. 1988); Jones v. State, 466 So.2d 301 (Fla.3d DCA 1985), approved, 485 So.2d 1283 (Fla. 1986); Florida Power and Light Co. v. Lively, 465 So.2d 1270 (Fla.3d DCA 1985), rev. denied, 476 So.2d 674 (Fla. 1985); Navarro, supra; Joseph v. State, 447 So.2d 243 (Fla.3d DCA 1983), rev. denied, 447 So.2d 888 (Fla. 1984); In re K.A.F., 442 So.2d 365 (Fla. 5th DCA 1983); Torrence v. State, 440 So.2d 392 (Fla. 5th DCA 1983); Taylor v. State, 436 So.2d 124 (Fla.3d DCA 1982); Booth & Clarkson, The Florida En Banc Rule, 36 U.Fla.L. Rev. 71 (Winter 1984).
[7] See Scheb, J., Florida's Courts of Appeal: Intermediate Courts Become Final, 13 Stetson L.Rev. 479 (1984).
[8] Paddock v. Chacko, 553 So.2d 168 (Fla. 1989).
[9] The lack of a ready remedy for an improper en banc consideration is a real problem. Separate (special concurring and dissenting) opinions have discussed the problem but majority en banc opinions need not address the issue, and seldom do, so there is no building body of law construing the term "exceptional importance" and no opportunity for a majority en banc opinion to certify direct conflict and no incentive to certify the en banc question to be of great public importance. There is no express provision for supreme court jurisdiction to review the order for an en banc consideration of a proposed panel decision.