546 So.2d 57 (1989)
David Emory EASON, Appellant,
v.
STATE of Florida, Appellee.
No. 88-576.
District Court of Appeal of Florida, First District.
June 28, 1989.
Elizabeth L. White and William J. Sheppard, Sheppard and White, Jacksonville, for appellant.
*58 Robert A. Butterworth, Atty. Gen., and William A. Hatch, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
David Emory Eason appeals an order withholding adjudication of guilt and placing him on probation entered pursuant to his negotiated plea of nolo contendere to charges of possession of drug paraphernalia and more than twenty grams of marijuana. Eason pled nolo contendere to these charges after the trial court denied his motion to suppress evidence seized following a warrantless entry into his home. On appeal, Eason contends that the trial court erred in concluding that the warrantless entry into his home was lawful and in denying his motion to suppress. We agree and reverse.
At the hearing on the motion to suppress, police officer Robert Harding testified that on November 1, 1987, at approximately 8:00 a.m., he and his partner responded to a call alerting them that a small child was wandering in the parking lot of an apartment complex. Upon arriving at the complex, the caller led the officers to the child, whom she had taken into her home. The child was male, appeared to be about 2 or 3 years old, and showed no signs of having been abused. Upon being asked his name and whether he knew where he lived, the child said he had to get his tennis shoes, and ran off. With the officers in pursuit, he stopped in front of an apartment, pointed to the front door and said, "Mama is in there." Officer Harding stated that he and his partner did not know whether the child was pointing to the correct apartment, whether the apartment was being burglarized, or whether someone inside the apartment might need help, so they drew their service revolvers. Harding then knocked on the door, which opened while he was knocking on it, and announced that he was a police officer. Upon hearing no reply, the officers entered the apartment. Still holding his gun in his right hand, Officer Harding opened the bedroom door and saw Eason and a woman lying in the bed. Harding determined that the child belonged to the woman and that there was no emergency. While standing in the room, however, Harding noticed a large marijuana plant, dried marijuana leaves, a pipe, a bong, and a set of scales. Harding asked Eason if he could search the rest of the apartment and Eason refused, stating that he needed to see his attorney. The police subsequently obtained a search warrant, thoroughly searched the apartment, and seized 500 grams of marijuana, $2,415 in cash, and assorted items of drug paraphernalia.
Eason argues that the circumstances surrounding the officers' initial entry did not rise to the level of exigency necessary to justify the officers' warrantless intrusion into his home. On this particular set of facts, we agree.
The fourth amendment to the United States Constitution specifically protects the right of the people to be secure in their homes. This right is so unequivocal that warrantless searches and seizures inside a home are considered presumptively unreasonable. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Furthermore, even when a felony has been committed and officers have probable cause to believe that incriminating evidence will be found within a home, in the absence of exigent circumstances a warrantless entry into the home to search for weapons or contraband is unconstitutional. Payton v. New York, 100 S.Ct. at 1381. The term "exigent circumstances" has been defined as "a situation where the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." United States v. Burgos, 720 F.2d 1520, 1526 (11th Cir.1983). Circumstances that typically have been considered exigent include danger of harm to police officers or the public, and potential destruction of evidence. Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); United States v. Burgos, 720 F.2d 1520, 1526.
In this case, Officer Harding admitted that prior to entering Eason's apartment he saw no evidence that the child had been, or was going to be, physically or *59 mentally abused, saw no evidence that medical intervention was necessary, and saw no evidence of a murder or robbery. Officer Harding also testified that, upon his arrival at the apartment complex, the child appeared to be in the care of a responsible adult. We must conclude, therefore, that the state did not satisfy its burden of proving that the officers had reasonable grounds to believe exigent circumstances existed, and the presumption that the warrantless search and seizure was unconstitutional remained unrebutted. See Earmann v. State, 265 So.2d 695 (Fla. 1972). For this reason, the trial court erred in denying Eason's motion to suppress. As the ruling on the motion to suppress is dispositive of the case, we reverse and remand with directions to enter a judgment of acquittal.
REVERSED AND REMANDED.
BARFIELD, J., concurs.
SMITH, C.J., dissents with opinion.
SMITH, Chief Judge, dissents with opinion.
I would affirm the trial court's order denying appellant's motion to suppress contraband found in his apartment.
The sole issue before the trial court was whether the facts were such as to justify the police officers in reasonably believing that exigent circumstances existed which would preclude the necessity for obtaining a warrant before entering appellant's apartment. The trial court found that the officers' belief was reasonable, and the entry therefore lawful.
The facts upon which the trial judge based his denial of suppression are set out in his order:
Police officers of the Atlantic Beach Police Department responded to a call regarding a small unknown child wandering around the parking lot of an apartment complex during the early morning hours.
Upon arriving, the officers were told by a neighbor (who was holding the child) that she did not know the child or where he lived. The child, who was about three years old, ran to apartment # 32 and stated "Mommy's in there." The child did not live in the complex. The door was ajar. Officer Robert Harding testified that he knocked and announced his presence but got no response. Fearing that an accident or a burglary had occurred, the officer drew his revolver and entered the apartment. After searching from room to room, the child's mother was discovered in a bedroom, asleep with the defendant. Marijuana was sighted in plain view. Because the child's mother did not live at the apartment, she was not arrested.
* * * * * *
Under the facts of this case, the officer testified that he entered the apartment in order to ascertain the condition of the child's mother, whom he had been told was inside.
On these facts, the trial court concluded:
The entry by the police officer was reasonable and done as an inherent part of his duties. The officer did not enter the defendant's apartment in order to search for evidence of a crime or to make an arrest. The police entered the apartment to ascertain the condition of a woman whose child was wandering around the parking lot of an apartment complex where he did not live.
Appellant argues here, as he did below, that since the child was not in need of immediate emergency care, the police were not acting reasonably when they entered the defendant's apartment, citing to People v. Smith, 7 Cal.3d 282, 101 Cal. Rptr. 893, 496 P.2d 1261 (1972). The trial court properly distinguished the Smith case from the case at bar, pointing out, among other things, that the police here testified that they entered the apartment out of concern for the child's mother, not out of concern for the child. In the Smith case, a six-year-old child was crying because she was locked out of her apartment. The landlady knew the child and took her in for a few hours. Later, the landlady called the police who were told by the child that her mother was not at home, and that she was lonely. The police had the landlady unlock the *60 apartment, and drugs were discovered inside. The court suppressed the drugs because the police knew the child's mother was not at home, and therefore, there was no reason for the police to enter the apartment. Here, as aptly explained by the trial judge in his order, the only fact known about the child or the whereabouts or condition of its mother was the child's statement that "Mommy's in there." Unlike the Smith case, the officers were not informed whether the child's mother was, indeed, in the apartment or not; and the partially opened door, coupled with the officer's inability to obtain a response to his announcement of his presence logically indicated the need for further investigation.
The majority opinion makes reference to Officer Harding's testimony that the child "appeared to be in the care of a responsible adult," as if to say that this fact obviated the need for any further investigation by the police. To the contrary, it was precisely the actions of this "responsible adult" that brought the police to the apartment complex in the first instance. Contrary to the assumption implied in the majority opinion, the Fourth Amendment does not present a bar to further investigation when police are called upon for assistance in aid of a small child. Good police practices, on the other hand, dictate exactly the kind of response made by these officers. The scope of police duties which often lead to the necessity for entry of private premises without a warrant is discussed in 2 LaFave, Search and Seizure, § 6.6 (2d Ed. 1987), "Warrantless Entry and Search for Other Purposes":
The police have "complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses"; by design or default, the police are also expected to "reduce the opportunities for the commission of some crimes through preventive patrol and other measures," "aid individuals who are in danger of physical harm," "assist those who cannot care for themselves," "resolve conflict," "create and maintain a feeling of security in the community," and "provide other services on an emergency basis." ... (quotations are from ABA Standards For Criminal Justice, § 1-1.1, 2.2 (2d Ed. 1980).
Further, from the same text:
"If the police have entered because of a purported emergency but then find evidence of crime, that evidence will not be admissible merely upon an unsupported and unexplained claim of an emergency. Rather, in applying the emergency doctrine "two principles must be kept in mind. (1) Since the doctrine is an exception to the ordinary Fourth Amendment requirement of a warrant for entry into a home, the burden of proof is on the state to show that the warrantless entry fell within the exception. * * * (2) An objective standard as to the reasonableness of the officer's belief must be applied." Thus, the question is whether there were "reasonable grounds to believe that some kind of an emergency existed," that is, whether there is "evidence which would lead a prudent and reasonable official to see a need to act." The officer must "be able to point to specific and articulable facts which, taken with rational inferences from those facts, reasonably warrant that intrusion." But, as emphasized in Wayne [Wayne v. United States, 318 F.2d 205 (D.C.Civ. 1963)], this probable cause requirement, must be applied by reference to the circumstances then confronting the officer, including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences." ... (citations omitted)
2 LaFave, Search and Seizure, § 6.6(a), p. 698 (2d Ed. 1987). In addition, as noted in LaFave's Treatise (f.n. 28, pp. 702-703), several cases have specifically dealt with and approved as reasonable a warrantless entry by police to assist unattended small children: People v. Sutton, 65 Cal. App.3d 341, 134 Cal. Rptr. 921 (1977); State v. Jones, 45 Or. App. 617, 608 P.2d 1220 (1980); State v. Bittner, 359 N.W.2d 121 (S.D. 1984); Matter of C.E., 283 N.W.2d 554 (S.D. 1979); and compare Nelson v. State, 96 Nev. 363, 609 P.2d 717 (1980) (entry to assist unattended three-year-old child in house unlawful where police unlawfully arrested *61 child's mother and thus "created the emergency situation").
In Zeigler v. State, 402 So.2d 365 (Fla. 1981), cert. denied, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982), relied on in part by the trial court below, Mr. Justice Adkins summed up the right and duty of police officers acting in response to perceived emergencies (at 371):
The reasonableness of an entry by the police upon private property is measured by the totality of existing circumstances. The right of police to enter and investigate an emergency, without an accompanying intent either to seize or arrest, is inherent in the very nature of their duties as peace officers and derives from the common law. See United States v. Herndon, 390 F. Supp, 1017 (S.D.Fla. 1975); State v. Hetzko, 283 So.2d 49 (Fla. 4th DCA 1973); Webster v. State, 201 So.2d 789 (Fla. 4th DCA 1967)... .
This court has recognized on at least one occasion the need for officers to enter for the protection of a small child and to conduct such further investigation within the premises as may be indicated by the circumstances. Wooten v. State, 398 So.2d 963 (Fla. 1st DCA), pet. for rev. dism., 407 So.2d 1107 (Fla. 1981).
It is clear that this episode developed substantially beyond a mere "lost child" incident when the officers were led by the child to the partially open apartment door and were told "Mommy's in there." The trial court found, I believe correctly, that upon receiving no response to their knock and announcement of their presence, the officers justifiably entered the apartment for further investigation as to the condition of the child's mother. The need to act was therefore clear, and neither logic nor reason, in my opinion, support the majority's holding that under these circumstances the police should have simply walked away from the scene. Neither does the Fourth Amendment, as cases from this and other jurisdictions have interpreted it. I would affirm.