COHEN, J.,
dissenting.
I concur in Judge Orfinger’s dissent that there was no objective evidence of a grave emergency that justified the officer’s war-rantless entry into the home. I write only to elaborate on why granting rehearing en banc was inappropriate, and to further elucidate the Fourth Amendment principles involved.
*618 As both the majority and Judge Orfinger point out, there are only two reasons this court may grant rehearing en banc: when the case is of “exceptional importance,” or it is necessary “to maintain uniformity in the court’s decisions.” Fla. R.App. P. 9.331(a). The majority concludes this case is exceptionally important because it “fleshes out the borders of both the ‘feared medical emergency5 exception to the warrant requirement ... and the now well-recognized community caretaking function of police officers.” In summarily dismissing the assertion that the original panel’s opinion did not conflict with Riggs v. State, 918 So.2d 274 (Fla.2005), the majority states, “[we have] concluded otherwise. Indeed, Riggs compels a conclusion far different than that dictated by the original decision.” Thus, it appears the majority also believes the original panel did not follow binding supreme court precedent in rendering its decision. Closer scrutiny of both reasons demonstrates why rehearing en banc was improvidently granted in this case.
Whether a particular case is “exceptionally important” such that it warrants granting rehearing en banc requires thoughtful and reasoned discretion on the part of each member of this court. The term “exceptional importance” is not defined in the rules of appellate procedure, yet every member of this court realizes that only a select few cases will ever meet this threshold. Despite the lack of any formal guidance, there are numerous reasons judges have given for deciding a case is exceptionally important.
Some judges contend a case is exceptionally important when the original panel opinion “expressly and directly conflicts with a rule of law” announced by either the supreme court or another district court of appeal. State v. Diamond, 553 So.2d 1185, 1199 (Fla. 1st DCA 1988) (Ervin, J., concurring). Others have indicated that when a case is “exceptionally important to the jurisprudence of the State as a judicial precedent,” State v. Georgoudiou, 560 So.2d 1241, 1247-48 (Fla. 5th DCA 1990) (Cowart, J., dissenting); Chancellor Media Whiteco Outdoor v. Department of Transportation, 795 So.2d 991, 997 (Fla. 5th DCA 2001) (Pleus, J., dissenting), or has “issues that impact a larger share of the community or the jurisprudence of the state,” In re Doe, 973 So.2d 548, 556 (Fla. 2d DCA 2008) (Casanueva, J., concurring), it is exceptionally important. A ease may also be exceptionally important when its outcome could “reasonably and negatively influence the public’s perception of the judiciary’s ability to render meaningful justice.” Univ. of Miami v. Wilson, 948 So.2d 774, 791 (Fla. 3d DCA 2006) (Shepherd, J., concurring).
We are also mindful of opinions from the federal circuit court of appeals in making this determination. This is because Florida Rule of Appellate Procedure 9.331 was patterned after the en banc rule of the Fifth and Eleventh Circuits. See Fla. R.App. P. 9.331 (committee notes). As currently worded, rule 9.331 is very similar to Federal Rule of Appellate Procedure 35. The Fifth Circuit maintains the practice of granting en banc review only for those cases involving “ ‘a precedent-setting error of exceptional public importance or an opinion which directly conflicts with prior Supreme Court [or] Fifth Circuit precedent.’ ” Gonzalez v. Southern Pacific Transp. Co., 773 F.2d 637, 641 (5th Cir.1985) (quoting Internal Operating Procedures of the United States Court of Appeals for the Fifth Circuit accompanying Local Rule 35). As the Fifth Circuit has recognized, a case does not rise to the level of “exceptional public importance” when the panel error “would at most amount to one of misapplication of precedent to the facts at hand, rather than establishing a *619 new precedent of exceptional public importance.” Id. Every member of this court would no doubt agree that a case is not exceptionally important simply because the “en banc majority disagrees with the reasoning or result of a panel majority.” Georgoudiou, 560 So.2d at 1247.
I certainly do not profess to possess or even advocate any definite or certain criteria for this court, or any judge, for that matter, to determine when a case rises to the talismanic level of “exceptional importance.” Each of the justifications set forth above appear to be logical, reasonable bases. However, the reasons the majority gives for granting rehearing en banc do not fall within these bounds. Consequently, I am compelled to conclude that granting rehearing en banc was inappropriate.
The original panel opinion held that the facts did not establish “a reasonable basis to believe that a grave emergency existed” that made it imperative for the officer to make a warrantless entry into the home. Ortiz v. State, 34 Fla. L. Weekly D829, D831 (Fla. 5th DCA Apr. 24, 2009). In reaching this conclusion, the original panel distinguished Riggs, 918 So.2d 274, and supported its decision with an analysis of Wheeler v. State, 956 So.2d 517 (Fla. 2d DCA 2007). The original panel opinion also held that the State failed to establish that the officer obtained valid consent from the six-year-old child to enter the locked bedroom.[16] Id. at D833.
The majority asserts that these holdings had “potentially far-reaching negative effects on the actions of law-enforcement officers.” However, the opinion only held that the “evidence in this case simply does not rise to the level” in Riggs, and therefore was distinguishable. Id. at D831. This in no way enlarged, narrowed, eviscerated, or so much as even conflicted with the feared medical emergency exception enunciated in Riggs. To put it very plainly, the original panel opinion did not change or alter the state of the law as set forth in Riggs or any decision of this court. It is also unclear how distinguishing Riggs on its facts could have possibly conflicted with any rule of law set forth therein. It certainly did not hold any exceptional importance to this state’s jurisprudence.
The original panel opinion also did not hold that the community caretaker exception could never apply to a warrantless search of a home. Although the original panel “was unwilling to adopt [the] exception in the case of residential searches,” this statement was clear dicta because it was made in the context of rebutting the dissent’s arguments. Id. at D832. Even if this were one of the original panel’s holdings, it would not have conflicted with any rule or principle of law announced by the supreme court. This was clearly recognized by Chief Judge Monaco in his dissent when he acknowledged that the supreme court had never applied the community caretaker exception to allow a search of a house, “primarily because of language in [Cady v.] Dombrowski [413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) ] that appears to limit the holding to searches of automobiles.” Id. at D834. That the original panel was unwilling to extend the community caretaker exception to searches of homes is really quite unremarkable, particularly in light of its finding that Florida cases relying on the community caretaker exception only did so in the context of automobile or boat searches. This finding, as the majority is forced to recognize, has legal support. In any event, the original panel’s discussion *620 of the community caretaker doctrine did not create a new precedent that would have had any profound or exceptionally important effect on this state’s jurisprudence. It simply maintained the status quo.
The majority finds this case to be exceptionally important so they can flesh out “the borders” of two warrant exceptions, to correct the original panel opinion’s “potentially far-reaching negative effects,” and because they have concluded the original panel opinion conflicted with Riggs. However, as I have set forth above, a closer inspection of these reasons, although perhaps facially compelling, are unavailing. Even Judge Torpy in his concurrence admits that “the point is fairly debatable” depending on how one defines exigent circumstances. Because the original panel’s opinion did not create new precedent, did not conflict with a rule of law set forth by the supreme court or a district court of appeal, and was not exceptionally important to the jurisprudence of this state, I believe granting rehearing en banc was inappropriate. Furthermore, assuming arguendo the original panel opinion was erroneous, at most it would have amounted to misapplying precedent to the specific facts of this case, but would not have created new precedent. See United States v. Nixon, 827 F.2d 1019, 1023 (5th Cir.1987).
The plain text of the Fourth Amendment prohibits all unreasonable searches and seizures unless supported by a warrant. See Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The “chief evil” the Fourth Amendment addresses is the “‘physical entry of the home,’” id. (quoting United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972)), because the purpose of the Fourth Amendment is to “safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.” Camara v. Municipal Court of the City and County of San Francisco, 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). As the Supreme Court noted in Payton, 445 U.S. at 582 n. 17, 100 S.Ct. 1371, “[a]t the core of the Fourth Amendment ... is the fundamental concept that any governmental intrusion into an individual’s home or expectation of privacy must be strictly circumscribed.” Nowhere is the “zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual’s home....” Payton, 445 U.S. at 589, 100 S.Ct. 1371. Thus, “[i]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.” Id. at 590, 100 S.Ct. 1371. As Judge Orfínger has cogently set forth in his dissent, no such exigencies were present in this case.
The Fourth Amendment’s protection against arbitrary invasions of a person’s privacy and security is not limited to police searches or seizures. See Camara, 387 U.S. at 530, 87 S.Ct. 1727 (It would surely be “anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when ... suspected of criminal behavior.”). It also applies to fire marshals, building inspectors, or health inspectors whose purpose may be to “locate and abate a suspected public nuisance, or simply to perform a routine periodic inspection.” Michigan v. Tyler, 436 U.S. 499, 504, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). Simply put, the warrant requirement applies equally to administrative searches, as well as criminal searches. Id.; Camara, 387 U.S. at 534, 87 S.Ct. 1727. Thus, the fact that the officer’s search in this case was for the “laudable” and “legitimate” aim of finding the child’s parents, and not *621 evidence or instrumentalities of crime, is not determinative of a Fourth Amendment violation. Certainly, the officer’s reason for the warrantless entry in this case was no more or less legitimate than the argument that a warrantless administrative search should be allowed because the “health and safety of entire urban populations is dependent upon enforcement of minimum fire, housing, and sanitation standards.... ” Camara, 387 U.S. at 533, 87 S.Ct. 1727. This argument was unequivocally rejected by the Supreme Court in Camara.
Because the Fourth Amendment protects against all arbitrary invasions into the home by the government, I believe that the officer’s warrantless entry in this case is constitutionally infirm. When the officer arrived at the house, he only knew that the child’s parents had not picked him up from school and that it did not appear that anyone was home. By sanctioning the officer to enter without a warrant, the majority has weakened the protections secured by the Fourth Amendment.
For all the foregoing reasons, I respectfully dissent.
ORFINGER, JJ., concur.

. This holding is not being challenged. Quite tellingly, only one judge of this court agreed that the evidence supported a warrant-less entry of a home based upon the consent of a six-year-old child, despite this being the primary basis of the trial court's denial of the motion to suppress.