CANADY, J.,
dissenting.
Because I conclude that there is no justification for a misdemeanor-offense exception from the rule that “a suspect may not defeat an arrest which has been set in motion in a public place ... by the expedient of escaping to a private place,” United States v. Santana, 427 U.S. 38, 43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), I dissent. The challenged conduct of the police in this case was entirely reasonable. And the majority’s decision will only serve to encourage unlawful resistance to the proper exercise of police authority.
The majority’s ruling that the hot pursuit exception to the warrant requirement was not applicable in this case is predicated on three crucial errors. First, the majority slights the actual reasoning of Santana—the Supreme Court case that provides the definitive explanation of the hot pursuit exception—concerning the ba *913 sis for that exception. Second, the majority mischaracterizes the nature of the police pursuit of Markus, suggesting that there was no hot pursuit. In doing so, the majority fails to follow the analysis required by Santana. Third, the majority misreads the Supreme Court’s decision in Welsh v. Wisconsin, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), as laying down rules governing the scope of the hot pursuit exception. The majority’s understanding of Welsh cannot be squared with what Welsh plainly holds or how the Supreme Court explained Welsh in Stanton v. Sims, — U.S. —, 134 S.Ct. 3, 187 L.Ed.2d 341 (2013). The culmination of the majority’s multifaceted misreading of the Supreme Court’s decisions is a ruling that rewards wrongdoers for escaping from lawful detention by the police—a ruling that undermines the Constitution’s scheme of ordered liberty. Rather than adopt the majority’s flawed analysis, I would hold that the hot pursuit exception applies whenever a legally authorized arrest for a criminal offense—including a misdemeanor offense—has been -set in motion in a public place and the subject flees to a private place with the police in pursuit.[8]
I.
The majority dismisses the holding of Santana on the ground that “Santana was written in the context of a dangerous felony—not a nonviolent misdemeanor, as observed in the instant case.” Majority op. at 911. The problem with the majority’s assertion is that it is totally divorced from the analysis actually employed in Santana. Although it is apparent in Santana that the police sought to make an arrest for a felony—distribution of heroin—that fact plays no part in the reasoning of Santana. Indeed, the majority opinion in Santana does not contain the word “felony.” And the Court’s opinion contains not a hint that the nature of the offense had any bearing on the Court’s holding. Since Santana was decided, the Supreme Court’s decisions provide nothing to support the narrow view of Santana espoused by the majority here. Quite the contrary. In Stanton, the Supreme Court took pains to observe: “[Tjhough Santana involved a felony suspect, we did not expressly limit our holding based on that fact.” Stanton, 134 S.Ct. at 6 (citing Santana, 427 U.S. at 42, 96 S.Ct. 2406).
Rather than focusing on the category of the offense, the Court relied on the right of the police to make a warrantless arrest in a public place, and the inappropriateness of allowing such a constitutionally permissible warrantless arrest to be thwarted by the suspect’s unlawful flight to a private place. The analysis in Santana thus involved two simple elements. First, the Court recounted the law recognizing the authority of the police based on probable cause to effect arrests in public places and determined that the suspect had been in a public place when the police initiated her arrest. Second, the Court considered the “remaining question” of “whether [the suspect’s] act of retreating into her house could thwart an otherwise proper arrest.” Santana, 427 U.S. at 42, 96 S.Ct. 2406.
As the beginning of its analysis, Santana cited the holding of United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), that “the warrantless arrest of an individual in a public place upon proba *914 ble cause did not violate the Fourth Amendment.” Santana, 427 U.S. 38 at 42, 96 S.Ct. 2406. Watson addressed the authority of the police to make a warrantless arrest for a felony offense. But the parallel authority of the police to conduct a war-rantless arrest in a public place for nonfel-ony criminal offenses—at least when committed in the presence of the police—is well established.
In Atwater v. City of Lago Vista, 532 U.S. 318, 340, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), a case involving an arrest for certain traffic offenses observed by the arresting officer, the Court rejected an argument that warrantless arrests for misdemeanors were permissible only for offenses involving breach of the peace: “We simply cannot conclude that the Fourth Amendment, as originally understood, forbade peace officers to arrest without a warrant for misdemeanors not amounting to or involving breach of the peace.” Atwa-ter therefore held: “If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.” 532 U.S. at 354, 121 S.Ct. 1536 (emphasis added). The constitutional authority justifying the arrest of Markus that the police sought to make in this case is therefore equivalent to the constitutional authority set forth in Watson and relied on in Santana.
On the second fundamental point considered by the Court, Santana readily concluded that the suspect’s “act of retreating into her house” could not be allowed to “thwart an otherwise proper arrest.” 427 U.S. at 42, 96 S.Ct. 2406. In reaching that conclusion, the Court cited Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Santana summed up the holding of Hayden: “[W]e recognized the right of police, who had probable cause to believe that an armed robber had entered a house a few minutes before, to make a warrantless entry to arrest the robber and to search for weapons.” Id. Although Hayden involved the obvious dangers associated with a fleeing armed robber, no similar danger was involved in Santana. Instead, Santana simply mentions the potential destruction of evidence: “Once Santana saw the police, there was likewise a realistic expectation that any delay would result in destruction of evidence.” Id. at 43, 96 S.Ct. 2406.
On this point, there is no material distinction between the circumstances present in Santana and those present here. When Markus fled, there was a “realistic expectation that any delay” in apprehending Markus “would result in destruction of evidence.” The majority here is fixated on a sideshow—the marijuana cigarette that Markus threw to the ground. But it is reasonable for the police to believe that a person they observe smoking a marijuana cigarette may well be in possession of additional marijuana. And the expectation that the suspect possesses contraband is substantially heightened when the suspect commits an additional offense by fleeing from the police. Flight signals that further mischief may be afoot. Cf. Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (“Headlong flight— wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.”). When a suspect has been observed committing a misdemeanor, the possession of contraband that will aggravate the suspect’s criminal liability is reasonably understood by the police to be a likely motive for the suspect’s flight. Although it plays no part in the Fourth Amendment analysis, Markus in fact had the motive of avoiding felony charges for possession of a firearm by a convicted felon.
*915 In any event, there is no indication in Santana that the potential for the destruction of evidence is a necessary precondition for application of the broad rule announced in Santana. That rule is stated in Santana’s holding without any such qualification: “We thus conclude that a suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper under Watson, by the expedient of escaping to a private place.” Santana, 427 U.S. at 43, 96 S.Ct. 2406.
This rule announced in Santana is a clear rule that provides a workable guide for police conduct, and the rule squarely applies here. An arrest was “set in motion in a public place” and Markus sought to “defeat” that arrest “by the expedient of escaping to a private place.” The majority here unjustifiably rewrites the rule to limit its scope by imposing an analytical framework on Santana that the reasoning of the case cannot support.
II.
The mischaracterization of the nature of the pursuit involved in this case further demonstrates the majority’s misunderstanding of Santana. On this point, the majority is wrong on both the facts and the law. The majority states that the police pursuit of Markus “was not hot pursuit” but was “slow pursuit at best.” Majority op. at 910. In support of this conclusion, the majority states: “Markus did not jump over a fence or cross into a neighboring yard; rather, the evidence shows that Markus walked backwards with his hands up, and moved a few feet into his open garage/recreation room.” Id. But this recitation of the facts ignores the fact that the trial court made the factual finding that Markus fled, based on the testimony of the law enforcement officer, which was specifically credited by the trial court. See State v. Markus, No. 16-2010-CF-4169-AXXX-MA (Fla. 4th Cir. Ct. Feb. 2, 2012) (Order Denying Defendant’s Amended Motion to Suppress at 5). As the majority itself acknowledges, “the trial court found that [the officer’s] testimony that Markus turned around and fled into the home was more credible than [the co-resident’s] testimony that Markus walked backwards into the recreation room.” Majority op. at 899. The trial court specifically found that after backing away from the officer when commanded to stop, “[w]hen [Markus] was commanded to stop a third time, he turned around and ran towards the open garage.” See State v. Markus, No. 16-2010-CF-4169-AXXX-MA (Fla. 4th Cir. Ct. Feb. 2, 2012) (Order Denying Defendant’s Amended Motion to Suppress at 3). And we are obligated to defer to the trial court’s factual findings and credibility determinations so long as they are supported by competent, substantial evidence. E.g., State v. Hankerson, 65 So.3d 502, 506 (Fla. 2011); Ruiz v. State, 50 So.3d 1229, 1233 (Fla. 4th DCA 2011).[9]
Even if the majority were justified in its reliance on the version of the facts that was contradicted by the officer’s testimony, it would nonetheless be wrong on the law. The majority’s opinion evidences a fundamental misunderstanding of what is required for hot pursuit. Santana makes very clear that a few steps over a short distance are a sufficient predicate for application of the hot pursuit doctrine.
Santana succinctly describes the facts related to the pursuit:
[The police] saw Santana standing in the doorway of the house with a brown paper bag in her hand. They pulled up to within 15 feet of Santana and got out of *916 their van, shouting “police,” and displaying then.’ identification. As the officers approached, Santana retreated into the vestibule of her house.
The officers followed through the open door, catching her in the vestibule.
Santana, 427 U.S. at 40, 96 S.Ct. 2406 (footnote omitted). So the full extent of Santana’s- flight—that is, her “retreat”— was from the threshold of her house into the vestibule. Based on these facts, the Court concluded that the case “involv[ed] a true ‘hot pursuit.’ ” Id. at 42, 96 S.Ct. 2406. The Court explained that even a very brief chase qualified for application of the doctrine:
“[H]ot pursuit” means some sort of a chase, but it need not be an extended hue and cry “in and about [the] public streets.” The fact that the pursuit here ended almost as soon as it began did not render it any the less a “hot pursuit” sufficient to justify the warrantless entry into Santana’s house.
Id. at 42-43, 96 S.Ct. 2406 (second alteration in original). Given the Supreme Court’s ruling that the pursuit in Santana was a hot pursuit, there is no plausible path to the conclusion that the pursuit of Markus was not a hot pursuit.
III.
According to the majority, Welsh contains a “holding that the gravity of the circumstances must be considered in cases of hot pursuit.” Majority op. at 907. But Welsh—which dealt with a warrantless arrest for a noncriminal traffic offense—does not state any such holding. Indeed, Welsh rejected the State’s argument that the hot pursuit doctrine justified the warrantless arrest at issue on entirely different grounds. The Court held that “the claim of hot pursuit is unconvincing because there was no immediate or continuous pursuit of the petitioner from the scene of a crime.” Welsh, 466 U.S. at 753, 104 S.Ct. 2091.
Since there was no “chase,” there could be no “hot pursuit.” Consideration of the “gravity of the circumstances” therefore played no part in the holding of Welsh on the hot pursuit issue.[10] In the absence of any hot pursuit, the Welsh Court could not apply to the State’s hot pursuit claim the holding “that an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made.” Id.
The majority’s interpretation of Welsh clashes with the Supreme Court’s explanation of Welsh in Stanton. The Court in Stanton emphasized that Welsh was not a hot pursuit case: “[W]e rejected the suggestion that the hot pursuit exception applied: ‘there was no immediate or continuous pursuit of [Welsh] from the scene of a crime.’” Stanton, 134 S.Ct. at 6 (second alteration in original) (quoting Welsh, 466 U.S. at 753, 104 S.Ct. 2091). Likewise, Stanton refuted any suggestion that Welsh’s comments about the importance of considering the gravity of an offense apply to the hot pursuit exigency: “[D]espite our emphasis in Welsh on the fact that the crime at issue was minor—indeed, a mere nonjailable civil offense—nothing in the opinion establishes that the seriousness of the crime is equally important in cases of *917 hot pursuit.” Id.; see also Illinois v. McArthur, 531 U.S. 326, 336, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) (emphasizing that Welsh turned on the distinction between “jailable” and “nonjailable” misconduct).
With respect to the scope of exigencies other than hot pursuit, Stanton takes pains to refute a simplistic reading of Welsh. Stanton points out that Welsh “did not lay down a categorical rule for all cases involving minor offenses, saying only that a warrant is ‘usually’ required.” Stanton, 134 S.Ct at 6 (quoting Welsh, 466 U.S. at 750, 104 S.Ct. 2091). Thus, “even in the portion of Welsh” addressing exigencies other than hot pursuit the decision “is equivocal,” holding “not that warrantless entry to arrest a misdemeanant is never justified, but only that such entry should be rare.” Id. (citing Welsh, 466 U.S. at 753, 104 S.Ct. 2091).
This Court is, of course, bound by the Supreme Court’s understanding of its own precedents, at least when that understanding is—as in Stanton—part of the reasoning that supports the decision in the case. Contrary to the majority’s approach, Stanton’s explanation of the scope of Welsh cannot be cavalierly dismissed.
As Stanton makes clear, Welsh contains no holding that creates an exception from Santana’s categorical rule that a suspect cannot thwart a proper arrest that has been initiated in a public place by fleeing to a private place. Nothing in the Supreme Court’s decisions supports the majority’s divergence from Santana to create a categorical rule that the hot pursuit doctrine does not apply to suspects who are pursued by the police for a nonviolent misdemeanor.
IV.
The Fourth Amendment’s prohibition on “unreasonable searches and seizures” is a bulwark of liberty and a critical check on the abuse of police power, but it does not grant a license to defy the lawful exercise of police authority. The majority has forgotten that the rights guaranteed by the Fourth Amendment are part of a scheme of ordered liberty. See Wolf v. Colorado, 338 U.S. 25, 27-28, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949) (“The security of one’s privacy against arbitrary intrusion by the police— which is at the core of the Fourth Amendment—is basic to a free society. It is therefore implicit in ‘the concept of ordered liberty* and as such enforceable against the States through the Due Process Clause.”), overruled on other grounds by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Granting a license to defy lawful police authority—as the majority does through this decision— subverts rather than supports the scheme of ordered liberty of which the Fourth Amendment is an important element. Ordered liberty is eroded when the disorder of unlawful flight is encouraged.
As one court has cogently explained:
Law enforcement is not a child’s game of prisoners base, or a contest, with apprehension and conviction depending upon whether the officer or defendant is the fleetest of foot. A police officer in continuous pursuit of a perpetrator of a crime committed in the officer’s presence, be it a .felony or a misdemeanor, must be allowed to follow the suspect into a private place, or the suspect’s home if he chooses to flee there, and effect the arrest without a warrant. A contrary rule would encourage flight to avoid apprehension and identification
[[Image here]]
State v. Blake, 468 N.E.2d 548, 553 (Ind. Ct. App. 1984).
Markus should not be rewarded for his defiance of the lawfully exercised authority of the police. I would therefore quash the decision of the First District, and I would *918 approve the conflict decision of the Third District in Ulysse.
POLSTON, J., concurs.

. Beyond my disagreement with the majority’s legal analysis, I strongly object to the way the majority castigates the police for their conduct in this case. It is wholly unwarranted to denounce the police for'“ineffective police work” and for engaging in an "impulsive arid neédlessly risky encounters.” See majority op. at 91L Here, the conduct of the police was in perfect accord with the law previously established by Ulysse v. State, 899 So.2d 1233 (Fla. 3d DCA 2005).

. The majority levels the accusation that this dissent ‘‘distort[s] the facts." Majority op. at 896. The accusation is false. The facts recounted in this dissent are quoted from the trial court's findings of fact and from the majority opinion itself.

. The majority also relies on McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948), and Riggs v. State, 918 So.2d 274 (Fla. 2005), to support the proposition that a "grave emergency” must exist in order to justify a warrantless entry made during a hot pursuit. See majority op, at 906-07. But, like Welsh, neither McDonald nor Riggs were hot pursuit cases. See McDonald, 335 U.S. at 454-55, 69 S.Ct. 191 (holding that a warrantless entry made during a months-long surveillance operation violated the Fourth Amendment); Riggs, 918 So.2d at 279, 283 (holding that a warrantless entry based on "a feared medical emergency” was reasonable).