536 So.2d 1101 (1988)
Nathan FLEISCHER, Appellant,
v.
HI-RISE HOMES, INC., Gerald Greenfield, George Charak and Sheldon H. Hoffman, Appellees.
No. 85-2372.
District Court of Appeal of Florida, Fourth District.
December 14, 1988.
Jerome L. Tepps of Tepps & Glerum, Fort Lauderdale, for appellant.
*1102 Larry Klein of Klein & Beranek, P.A., West Palm Beach, for appellees.
EN BANC
LETTS, Judge.
In February of 1987, by request of a majority of the original panel, the court decided to en banc this case. At that time, neither our Internal Rules nor rule 9.331 of the Florida Rules of Appellate Procedure required the court to notify counsel unless the court was requesting additional briefs or further argument. Recently, our Internal Rules were amended to provide that counsel would be advised of pending en banc treatment. This amendment provided the springboard for a September 12, 1988 order advising counsel that the cause was being considered en banc.
Rule 9.331 of the Florida Rules of Appellate Procedure provides that "en banc hearings and rehearings shall not be ordered unless the case is of exceptional importance or unless necessary to maintain uniformity in the court's decisions." In this regard, in the case at bar, it was our collective en banc intent, to recede from certain language in Gordon v. Bartlett, 452 So.2d 1077, 1078 (Fla. 4th DCA 1984), which might give the impression that warranty deeds could be expected to "contain an express provision regarding the recovery of attorney's fees."
After protracted debate, for which we must confess judicial dismay, we now conclude that the offending Gordon language does not constitute a matter of "exceptional importance." We also conclude that since the offending language was not the holding in Gordon, it is not necessary to consider excising that language en banc, in order to "maintain uniformity in the court's decisions."
In short, there is no conflict, no need to recede and an absence of exceptional importance.
Accordingly, a majority of the judges, in regular active service on this court, hereby vote to reconsider and now vote to not render an en banc decision. We also vacate the order of September 12, 1988, and return this cause to the original panel of three judges for such disposition as they deem appropriate.
HERSEY, C.J., and DOWNEY, DELL, WALDEN, GUNTHER and STONE, JJ., concur.
GLICKSTEIN, J., dissents with opinion, with which ANSTEAD, J., concurs.
GLICKSTEIN, Judge, dissenting.
In 1986, on my suggestion, the court undertook to expedite consideration of cases en banc. It unanimously decided in February, 1987, to consider the present case en banc, and I promptly prepared a proposed en banc opinion. It is apparent little expedition has been exercised. Recently, a majority of the court decided to remove the case from en banc consideration and return it to the original panel. I disagree with that last action, and believe the analysis in the majority opinion does not withstand scrutiny.
When this case was argued in 1986, the entire original panel concluded the emphasized language in the following excerpt from Gordon v. Bartlett, 452 So.2d 1077, 1078 (Fla. 4th DCA 1984), was not a correct basis for denying an attorney's fee in that case.
Second, regarding the sales contract, a paragraph of the contract provided for an award of attorney's fees to the prevailing party for any litigation arising out of the contract. However, under the general rule, "preliminary agreements and understandings relative to the sale of property usually merge in the deed executed pursuant thereto." Milu, Inc. v. Duke, 204 So.2d 31, 33 (Fla. 3d DCA 1967). Accordingly, the Bartletts cannot rely on the sales contract to support their claim for attorney's fees. Since the warranty deed does not contain an express provision regarding the recovery of attorney's fees, there is no basis for such an award and, therefore, we reverse on this point.
(Emphasis added). After discussion upon whether it would be appropriate for the *1103 panel to issue an opinion "clarifying" the erroneous statement, the majority of the panel finally concluded that we were, in fact, correcting a mistake, and that such correction constituted receding, which should be done en banc.
Goodell v. Goodell, 421 So.2d 736 (Fla. 4th DCA 1982) is a clear example of this court's receding, en banc, from an erroneous statement of the law which the court discovered in an earlier decision of a three judge panel here.
Florida Rule of Appellate Procedure 9.331(a) provides:
A majority of the judges of a district court of appeal participating may order a proceeding pending before the court be determined en banc. A district court of appeal en banc shall consist of the judges in regular active service on the court. En banc hearings and rehearings shall not be ordered unless the case is of exceptional importance or unless necessary to maintain uniformity in the court's decisions. The en banc decision shall be by a majority of the active judges actually participating and voting on the case. In the event of a tie vote, the panel decision of the district court shall stand as the decision of the court. If there is no panel decision, a tie vote will affirm the trial court decision.
In Booth and Clarkson, The Florida En Banc Rule, 36 U.Fla.L.Rev. 71 (1984), the authors suggest with respect to the three types of circumstances involving en banc consideration under the "lack of uniformity" ground:
The third type of situation is one that all the district courts agree requires en banc consideration: receding from a prior decision of the court. Although the Florida Supreme Court declined to amend the rule to require en banc consideration under such circumstances, the district courts presently recognize overruling of a prior decision as grounds for en banc review.[54]
Footnote 54, which had been called to the attention of the judges prior to the conference at which they voted to dis-en banc this case, refers to a lengthy questionnaire, answered by all of the District Courts of Appeal, discussing in part, for all en banc cases, (a) the subject of en banc, (b) the source of en banc initiation and (c) the basis for same. The questionnaire says this about Goodell:
BASIS FOR EN BANC
To recede from statement in a prior opinion. (Emphasis added).
Id. at 106. The judges have evidently chosen to disregard Goodell.
The instant case started out simply enough in 1986  an erroneous statement of the law required correction. Once it was decided to hear the case en banc, however, well-intentioned suggestions from judges to add additional reasons for en banc  other than correcting an erroneous statement of the law  caused almost two years of conflict and confusion and the ultimate action to dis-en banc. The judges have now thrown the baby out with the bath water after concentrating for almost two years on irrelevant trees; namely, the additional reasons being proposed for en banc consideration, and not the forest  en banc correction of the erroneous language in Gordon.
The majority en banc opinion does not withstand scrutiny. It says:
After protracted debate, for which we must confess judicial dismay, we now conclude that the offending Gordon language does not constitute a matter of "exceptional importance." We also conclude that since the offending language was not the holding in Gordon, it is not necessary to consider excising that language en banc, in order to "maintain uniformity in the court's decisions."
My proposed opinion considered by the original panel and then by the court simply corrected the Gordon panel's incorrect basis for denying the attorney's fee. There was nothing about "exceptional importance," as there was no need to go into whether the erroneous language was important or not important  or to whom. Such baggage came on board with the additional "reasons to en banc" during the lengthy en banc period  all of which suggestions were made in good faith, but were unnecessary  as we should have realized  *1104 in light of Goodell vis-a-vis the language in the initially proposed opinion.
That the assertion in the current majority opinion is faulty can be determined from (a) reading the above quoted language from Gordon in this dissent, which establishes the erroneous language was the express basis for the holding, and (b) the absence of any rule or authority in the majority opinion which says an erroneous statement of law should not be corrected if it is not the express basis for the holding of a three judge panel's decision.
There is no question in my mind that the panel in Gordon based its decision on Espinoza v. Safeco Title Insurance Co., 598 P.2d 346 (Utah 1979), but failed to consider that the decision referred to a clause in the contract, apparently used in Utah, that abrogated the "Earnest Money Agreement": "[b]y execution and delivery of the final agreement, that is, the deed and policy of title insurance." Gordon involved a question of possession  the sellers' wall encroached on that portion of their property which they sold to the purchasers; thus the dispute could not have justified an award of an attorney's fee unless (a) the question arose out of the contract, and (b) the question had not been affected by "merger."
I suggest that this court, in Gordon and here, should have approved the following statements in Hutchens Brothers v. Brownsberger, 624 S.W.2d 538, 540 (Mo. Ct. App. 1981):
The doctrine of merger, relied upon by defendant, usually is more appropriate as a matter of defense on the part of a vendor. See, Annot., 38 A.L.R.2d 1310 (1954). The essence of that doctrine is that when a vendor offers a deed and the vendee accepts, that generally constitutes a new agreement as to the form and contents of the deed which supersedes any contrary previous agreement. By reason of that underlying rationale, the doctrine is basically confined to the sufficiency of the deed itself and does not touch other aspects of the original sales agreement. Those latter aspects are generally referred to in the cases as "collateral matters" which are not affected by the doctrine of merger.
The line of demarcation between what is and is not covered by the doctrine of merger was discussed and a New York opinion quoted with approval in Frisbie v. Scott, 199 Mo. App. 131, 201 S.W. 561 (1918) as follows:
"In Bull v. Willard, supra, 9 Barb. (N.Y.) [641] at page 645, the court, in speaking of how to determine whether covenants contained in the agreement for the sale of land are collateral to those involved in the execution of the deed, or are so connected with it as to be at an end and become merged or satisfied in the execution of the deed, said:
`I have not been able to fix upon a better criterion, upon that question, than that the covenant, in order to be deemed collateral and independent, so as not to be destroyed by the execution of the deed, must not look to, or be connected with the title, possession, quantity, or emblements of the land which is the subject of the contract; and that if it does so, the execution of the deed, in pursuance of the contract, will operate as an extinguishment of it.' (Italics ours.)"
Finally, we judges do not abandon the experience gained through our law practices when we come to the bench; and I suggest that we have the obligation to know what information from that experience to use or not use, and when. When reviewing Gordon in 1986, I did not recall ever seeing a deed with a provision for attorney's fees, although having examined titles and prepared real property documents for almost a quarter century. I still do not so recall. Moreover, no judge  throughout en banc  has suggested in any memorandum or opinion that he or she had seen such. The law and my practical experience make me perceive the need to correct Gordon. In Florida, in the absence of statute or contract, a prevailing party in litigation does not recover attorney's fees and is thus never made whole. By correcting Gordon, this court could have done a service to the public by eliminating a misstatement *1105 which makes it even more difficult for one to be made whole.