# Third District Court of Appeal

## State of Florida

Opinion filed June 18, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1625
Lower Tribunal No. 2019-37110-CA-01

_____

## Menada, Inc., etc., et al.,
Appellants,

vs.

## Gabriela Arevalo, etc.,
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Lourdes Simon, Judge.

Lewis Brisbois Bisgaard & Smith LLP, and Todd R. Ehrenreich, and Jeffrey R. Geldens, for appellants.

Podhurst Orseck, P.A., and Christina H. Martinez; Scott M. Sandler P.A., and Scott M. Sandler and Logan W. Sandler, for appellee.

Before LINDSEY, MILLER, and GORDO, JJ.

LINDSEY, J.

Appellants Menada, Inc. and Belinda Meruelo appeal from a non-final

order granting Appellee Gabriela Arevalo's motion for leave to amend to

assert punitive damages.[1] The trial court concluded that Arevalo satisfied the punitive damages pleading standard set forth in section 768.72(1), Florida Statutes (2024), which requires "a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." We agree and therefore affirm.

## I. BACKGROUND

The underlying wrongful death action stems from a fire at Seacoast Suites, a multi-story Miami Beach hotel, that resulted in the death of Arevalo's legally blind adult son. Menada owns and operates Seacoast, and Meruelo was Menada's sole shareholder when the fire occurred. At all relevant times, Arevalo and her son were long-term tenants at Seacoast.

According to the operative Complaint, the Defendants engaged in intentional misconduct and gross negligence due to "flagrant and persistent violations of applicable fire safety codes and orders of governing authorities." The Complaint traces the history of these violations from 1998, when Seacoast was cited for operating without fire sprinklers, to the present. The Complaint alleges that Seacoast ignored numerous administrative orders

---

[1] We have jurisdiction. See Fla. R. App. P. 9.130(a)(3)(G) (authorizing appellate review of non-final orders that "grant or deny a motion for leave to amend to assert a claim for punitive damages").

2

requiring it to install fire sprinklers, implement a fire watch, and warning that the 15th floor, where the fire occurred, was not fire safe. This disregard for the administrative orders resulted in millions of dollars in fines.

The Complaint also alleges that "[a]gainst this astonishingly dangerous backdrop, [Defendants] proceeded to train [their] security guards to acknowledge and then silence or disable the fire alarm system . . . ." This resulted in the audible fire alarm being disabled and a delayed response from the fire department on the day of the fire, which "ultimately caused Mr. Arevalo's death."

Nearly 2,000 pages of proffered evidence were submitted in support of the allegations in the Complaint, including filings and transcripts from the fire code administrative proceedings. For example, a March 2010 Order explains that due to safety concerns, Seacoast was required to have a fire watch, but "Seacoast unilaterally had decided that it would end the fire watch procedures" without the Special Master's approval. The Order further determines that "all evidence shows that the written Orders in this matter have been intentionally disregarded or even directly flaunted by Seacoast." Moreover, the Order warned of "a critical safety issue" on floor 15, "and those violations are still taking place, putting the renters in danger of loss of life . .

3

." Consequently, Seacoast was ordered to "remove any and all persons" from floor 15.[2]

Arevalo's proffer also contains numerous deposition transcripts, affidavits, and various other documents, including the deposition of a Seacoast security guard who was on duty when the fire occurred. The guard testified that he had previously worked at the Hotel Deauville, a sister property, where he was instructed "whenever the fire alarm goes off to silence the alarm and then go and check."[3] The guard recounted an incident where the alarm was silenced, and the fire chief showed up and told staff not to silence the alarm because it was dangerous. After this incident, the guard's supervisor continued to instruct him to silence the fire alarms.

Shortly after the guard started working at Seacoast, there was another fire alarm incident, unrelated to the one at issue here. The guard did not silence the alarm, as instructed, and instead went directly to the floor where

---

[2] According to Arevalo's deposition, she and her son originally rented a room on the 10th floor when they became tenants in 2009. In 2018, Seacoast moved Arevalo and her son to the 15th floor. Arevalo alleges the critical safety issue on the 15th floor was still present when she moved and when the fire occurred because Seacoast had not installed fire sprinklers.

[3] The proffer also includes the deposition transcript of another Deauville security guard, who likewise testified about the silencing policy.

the alarm was triggered to investigate the source.  His deposition testimony describes what happened when he returned to the lobby:

> Mrs. Meruelo was down there in her nightgown, and the fire [department] went upstairs to check it out and that's when she tell[s] me if I still wanted to work there to learn the system and silence the alarm.
>
> And when she tell[s] me that I in turn let her know that it happened at the Deauville before and the fire chief was mad about it, said it's not safe to do so . . . .
>
> . . . .
>
> Her response was, "The Deauville is no more. This is the Seacoast Suites. If you want to continue to work here, you need to learn the system and silence the alarm.

The guard also testified about what happened with the fire alarm on the night of the fire that resulted in Mr. Arevalo's death:

> At the time I was standing outside next to the valet booth and I heard a beeping sound coming from the alarm system, the panel . . . .
>
> . . . .
>
> I went there, [took] a look at it, and [a housekeeper] was there and I told him not to let the alarms go off because the owner [didn't] want the excitement at our building and that she had instructed me to silence it.

After silencing the fire alarm, the guard testified that he went up to the 15th floor, noticed there was smoke in the halls, and called 911.

5

In opposition to Arevalo's Motion to Amend, Menada and Meruelo argued that the fire code violations only pertained to hotel operations not apartment building operations for long-term tenants. They also argued there was no causal relationship between the alleged silencing policy and the fire department response time. And finally, they claimed that the alleged conduct did not rise to the level of punitive conduct. In support, Menada and Meruelo submitted an evidentiary counter-proffer.

Following a hearing, the trial court granted Arevalo's Motion to Amend. Menada and Meruelo timely appealed.

## II.   ANALYSIS

Our analysis is governed by the statutory framework in section 768.72(1), Florida Statutes (2024), which sets forth the pleading standard for punitive damages:

> In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages.

Our standard of review is de novo. See, e.g., McLane Foodservice Inc. v. Wool, 400 So. 3d 757, 760 (Fla. 3d DCA 2024). "Our de novo review . . . tests the sufficiency of the proffer in the light most favorable to the moving

6

party, without accepting conclusory legal conclusions or labels such as 'gross misconduct' at face value." Id. at 761.

Section 768.72 creates "a substantive legal right not to be subject to a punitive damages claim and ensuing financial worth discovery until the trial court makes a determination that there is a reasonable evidentiary basis for recovery of punitive damages." Globe Newspaper Co. v. King, 658 So. 2d 518, 519 (Fla. 1995). "The statute requires the trial court to act as a gatekeeper and precludes a claim for punitive damages where there is no reasonable evidentiary basis for recovery." Bistline v. Rogers, 215 So. 3d 607, 611 (Fla. 4th DCA 2017).

Here, the trial court determined, based on the extensive proffer, that Arevalo made a reasonable showing by proffer that would provide a reasonable basis for recovery of punitive damages. We agree. "This isn't the time to prove the case, or even to determine that the evidence proffered itself constitutes 'clear and convincing evidence . . . that the defendant was personally guilty of intentional misconduct or gross negligence.'" McLane, 400 So. 3d at 760 (Fla. 3d DCA 2024) (quoting § 768.72(2)).

We recognize that courts have taken different approaches in determining whether and to what extent a trial court may weigh the evidence at the punitive damages pleading stage. Compare Manheimer v. Fla. Power

7

& Light Co., 403 So. 3d 257, 261 (Fla. 3d DCA 2023) ("A trial court must weigh both parties' showings when considering whether the evidence or proffer is sufficient to establish a reasonable evidentiary basis for recovery of punitive damages."), Gattorno v. Souto, 390 So. 3d 134, 137 (Fla. 3d DCA 2024) (same), and Comway Trade Logistics, LLC v. Curet, 404 So. 3d 596 (Fla. 3d DCA 2025) (same), with McLane, 400 So. 3d at 761 (Fla. 3d DCA 2024) ("The trial court's gatekeeping function doesn't 'weigh evidence or evaluate witness credibility,' but it also must amount to more than 'accept[ing] [the plaintiff's] gross misconduct allegations at face value.'" (alterations in original) (quoting Mercer v. Saddle Creek Transp., Inc., 389 So. 3d 774, 777 (Fla. 6th DCA 2024))).[4]

This is of no consequence here because whether we consider the counter-proffer, as the trial court did, or only Arevalo's proffer, we conclude

---

[4] Compare also KIS Grp., LLC v. Moquin, 263 So. 3d 63, 66 (Fla. 4th DCA 2019) ("Unlike consideration of a motion for summary judgment which precludes the court from weighing the evidence or reaching conclusions therefrom, section 768.72 necessarily requires the court to weigh the evidence and act as a factfinder."), with Fed. Ins. Co. v. Perlmutter, 376 So. 3d 24, 34 (Fla. 4th DCA 2023) (en banc), review granted, No. SC2024-0058, 2024 WL 4948685 (Fla. Dec. 3, 2024) ("We stress that the preliminary determination of whether the movant made a reasonable showing by evidence of a reasonable basis for allowing a punitive damages claim is to be made without weighing evidence or witness credibility.").

that Arevalo made a reasonable showing that would provide a reasonable basis for recovery.[5]

## III.    CONCLUSION

Because Arevalo made a reasonable showing by proffer, which would provide a reasonable basis for recovery of such damages, we affirm the order granting leave to amend to assert claims for punitive damages.

---

[5] Our opinion is limited to the issue before us, which is whether Arevalo satisfied the punitive damages pleading requirement. We express no opinion on the merits of Arevalo's punitive damages claims. See § 768.725 ("In all civil actions, the plaintiff must establish at trial, by clear and convincing evidence, its entitlement to an award of punitive damages. The 'greater weight of the evidence' burden of proof applies to a determination of the amount of damages.").

GORDO, J., specially concurring.

I agree with the majority that the trial court properly granted the motion for leave to amend to assert punitive damages. I write separately to clarify several issues which should be discussed.

First, we have often held that punitive damages are reserved for the worst type of conduct. See BDO Seidman, LLP v. Banco Espirito Santo Int'l, 38 So. 3d 874, 876 (Fla. 3d DCA 2010) ("Punitive damages are a form of extraordinary relief for acts and omissions so egregious as to jeopardize not only the particular plaintiff in the lawsuit, but the public as a whole, such that a punishment—not merely compensation—must be imposed to prevent similar conduct in the future[.]"); KIS Grp., LLC v. Moquin, 263 So. 3d 63, 65-66 (Fla. 4th DCA 2019) ("[P]unitive damages are reserved for truly culpable behavior and are intended to 'express society's collective outrage.'" (quoting Imperial Majesty Cruise Line, LLC v. Weitnauer Duty Free, Inc., 987 So. 2d 706, 708 (Fla. 4th DCA 2008))); Cleveland Clinic Fla. Health Sys. Nonprofit Corp. v. Oriolo, 357 So. 3d 703, 706 (Fla. 4th DCA 2023) ("[P]unitive damages are reserved for truly culpable conduct . . . . so outrageous in character, and so extreme in degree that the facts of the case to an average member of the community would arouse his resentment against the actor,

10

and lead him to exclaim, 'Outrageous!'") (internal quotation marks and citations omitted); W.R. Grace & Co.—Conn. v. Waters, 638 So. 2d 502, 503 (Fla. 1994) ("Punitive damages are appropriate when a defendant engages in conduct which is fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence as to indicate a wanton disregard for the rights of others.").

After the amendment of Florida Rule of Appellate Procedure 9.130, which permitted our appellate courts to review interlocutory orders that "grant or deny a motion for leave to amend to assert a claim for punitive damages," we have seen a significant increase in nonfinal appeals from these types of orders. Fla. R. App. P. 9.130(a)(3)(G); In re Amend. to Fla. Rule of App. Proc. 9.130, 345 So. 3d 725, 726 (Fla. 2022). In my view, this case presents a perfect example of the kind of allegations that, if proven to be true, not only shock the conscience but are likely to merit punitive damages.

The proffer by the plaintiff in this case included evidence that the appellants:

- Engaged in fire safety violations that date back *decades* and which continued through the date of the subject fire resulting in repeated fines and reprimands from authorities;

- Have been fined at least $6.5 million for fire related violations, including the imposition of a daily fine of $1,000.00 for each day of noncompliance starting from April 1, 2018 through the date of the subject fire;

- Failed to meet their own submitted compliance deadlines and the City of Miami Beach's compliance deadlines to install legally required sprinklers in all units on multiple floors, including the unit where the appellants moved the plaintiff and the decedent;

- Implemented a life-threatening policy whereby security guards and employees were instructed and required to *acknowledge* and then *silence* fire alarms immediately upon them sounding;

- Specifically and consciously placed the decedent, who was legally blind, in a unit on the fifteenth floor—a floor the City of Miami Beach Special Master had previously determined to be unsafe and on which the appellants were prohibited from placing tenants;

- Specifically and consciously placed the decedent in a unit on the fifteenth floor which lacked, among other things: (1) fire sprinklers, (2) the minimum number of code-compliant smoke alarms and/or detectors, (3) code-compliant smoke alarms

12

and/or detectors (the subject smoke detection device expired in 2005) and (4) adequately maintained standpipes which provide a water supply; and

- Continued to conduct hotel operations in violation of applicable codes, laws and administrative orders.

If the alleged conduct is proven to be true at trial, it could rise to the level of outrageous behavior of the sort warranting recovery of punitive damages.  Indeed, it could cause the average person in the community to exclaim, "Outrageous!"

Second, I do not believe a discussion related to the plaintiff's burden of proof at the pleading stage is warranted in this case.  That issue was not briefed by the parties or considered below.  We are affirming the challenged order on grounds other than the issue certified in <u>Federal Insurance Company v. Perlmutter</u>, 376 So. 3d 24 (Fla. 4th DCA 2023) (en banc), <u>review granted</u>, No. SC2024-0058, 2024 WL 4948685 (Fla. Dec. 3, 2024), which is currently under review.[6]

---

[6] The <u>Perlmutter</u> court certified a question of great public importance regarding the issue of whether a trial court, in adjudicating a motion for leave to assert a claim for punitive damages, must make a preliminary determination of whether a jury could find by clear and convincing evidence that punitive damages are warranted.  <u>Perlmutter</u>, 376 So. 3d at 38.  It is noteworthy that this Court has never applied that standard.

13

Third, while the majority calls into question the "different approaches in determining whether and to what extent a trial court may weigh the evidence at the punitive damages pleading stage," Majority at 7-8, the parties have not raised any argument in this Court suggesting that such issue is of consequence here. Addressing issues not briefed by the parties is a departure from fundamental party-presentation principles. "In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation." Greenlaw v. U.S., 554 U.S. 237, 243 (2008). "That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." Id. "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." Carducci v. Regan, 714 F.2d 171, 177 (D.C. Cir. 1983). "Failure to enforce this requirement will ultimately deprive us in substantial measure of that assistance of counsel which the system assumes—a deficiency that we can perhaps supply by other means, but not without altering the character of our institution." Id.

Moreover, "[courts] do not, or should not, sally forth each day looking for wrongs to right." U.S. v Samuels, 808 F.2d 1298, 1301 (8th Cir. 1987)

14

(Arnold, J., concurring in denial of reh'g en banc).  "We wait for cases to come to us, and when they do we normally decide only questions presented by the parties."  Id.; see also U.S. v. Sineneng-Smith, 590 U.S. 371, 375-76 (2020) ("[O]ur system 'is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.'" (quoting Castro v. U.S., 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment))); D.H. v. Adept Cmty. Servs., Inc., 271 So. 3d 870, 888 (Fla. 2018) (Canady, C.J., dissenting) ("This requirement of specific argument and briefing is one of the most important concepts of the appellate process.  Indeed, it is not the role of the appellate court to act as standby counsel for the parties.").

Nevertheless, here the majority cites to several cases, including Manheimer v. Florida Power & Light Company, 403 So. 3d 257 (Fla. 3d DCA 2023), to highlight the so-called "different approaches."  I reject any suggestion that this Court's holding in Manheimer deviates from the established principle that when ruling on a motion for leave to amend to assert punitive damages, the trial court does not weigh competing evidence

15

or make assessments of witness credibility.[7] See Perlmutter, 376 So. 3d at 34 ("[T]he preliminary determination of whether the movant made a reasonable showing by evidence of a reasonable basis for allowing a punitive damages claim is to be made without weighing evidence or witness credibility.") (footnote omitted); McLane Foodservice Inc. v. Wool, 400 So. 3d 757, 761 (Fla. 3d DCA 2024) ("The trial court's gatekeeping function doesn't 'weigh evidence or evaluate witness credibility,' but it also must amount to more than 'accepting the plaintiff's gross misconduct allegations at face value.'" (quoting Mercer v. Saddle Creek Transp., Inc., 389 So. 3d 774, 777 (Fla. 6th DCA 2024))).

---

[7] To the extent any portion of Manheimer could be construed as doing so, "[a]ny statement of law in a judicial opinion that is not a holding is dictum." Pedroza v. State, 291 So. 3d 541, 547 (Fla. 2020); see also Lewis v. State, 34 So. 3d 183, 186 (Fla. 1st DCA 2010) ("When a court makes a pronouncement of law that is ultimately immaterial to the outcome of the case, it cannot be said to be part of the holding in the case."); Churchill v. DBI Servs., LLC, 361 So. 3d 896, 904 (Fla. 1st DCA 2023) ("We are not bound by dicta, only holdings."). It is inappropriate to invoke our extraordinary en banc jurisdiction where dicta is the basis for en banc consideration. See Fla. R. App. P. 9.331(a) ("En banc hearings and rehearings shall not be ordered unless the case or issue is of exceptional importance or unless necessary to maintain uniformity in the court's decisions."); Fleischer v. Hi-Rise Homes, Inc., 536 So. 2d 1101, 1102 (Fla. 4th DCA 1988) ("[S]ince the offending language was not the holding . . . it is not necessary to consider excising that language en banc, in order to 'maintain uniformity in the court's decisions.'" (quoting Fla. R. App. P. 9.331(a))).

The governing statute, section 768.72, Florida Statutes, provides that "[i]n any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." § 768.72(1), Fla. Stat. In reading the plain language of the statute, this requires the trial court to serve as a "gatekeeper" and preclude a claim for punitive damages where there is no reasonable evidentiary basis for recovery. Manheimer, 403 So. 3d at 261; Gattorno v. Souto, 390 So. 3d 134, 137 (Fla. 3d DCA 2024); Palm Bay Towers Condo. Ass'n, Inc. v. Marrazza, 404 So. 3d 552, 556 (Fla. 3d DCA 2025). Paramount in this analysis is that the trial court must weigh the claimant's proffer and any evidence in the record for **sufficiency**—NOT credibility. If in reviewing the claimant's proffer and the record evidence the trial court finds there is an insufficient basis for recovery of punitive damages, the claim should be disallowed. The gatekeeping function of the trial court, therefore, looks at sufficiency of the evidence in the record or proffered but does not weigh competing evidence or evaluate witness credibility.

In sum, the majority raises arguments unlike those advanced in the case before us. In my view, those discussions are better left for a different case and day.

17